# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES NEWELL, DANIEL VOUGHT,
and DANIEL ALEXANDER,

Plaintiffs,

v.                                                 Case No. 05-C-552

STATE OF WISCONSIN TEAMSTERS
JOINT COUNCIL NO. 39, et. al.,

Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

On May 19, 2005, James Newell ("Newell"), Daniel Vought ("Vought"), and Daniel Alexander ("Alexander") filed a complaint against the State of Wisconsin Teamsters Joint Council No. 39, the Teamsters General Union Local No. 662, as well as sixteen individuals associated with those organizations. The parties have all consented to the full jurisdiction of a magistrate judge.

On October 13, 2005, the defendants filed a motion to dismiss or in the alternative for a partial judgment on the pleadings. Accompanying this motion was a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. On November 29, 2005, the defendants filed a motion for summary judgment. The pleadings on these motions are closed and the matters are ready for resolution.

## FACTUAL SUMMARY

The following is a very brief presentation of the salient facts underlying this litigation. Just as the parties take opposing views on the motions presented, their presentation of facts is strikingly different. The defendants set forth only twenty proposed findings of fact while the plaintiffs present a total of 262. Many of the proposed facts of the plaintiffs are disputed by the defendants. For that reason, the court will discuss additional germane facts as needed.

Plaintiff James Newell was Secretary-Treasurer of the Teamsters Local 662. In July of 2003, Newell discharged Bob Russell ("Russell"), one of the Local 662's appointed business agents. However, the Union's Executive Board refused to approve the discharge of Russell, and Russell was ordered reinstated with back pay.

Following this, Newell and plaintiff Daniel Vought, who was Recording Secretary and business agent, filed internal union charges against defendants Dave Reardon ("Reardon"), Rick Skutak ("Skutak"), and John Kaiser ("Kaiser"). Russell in turn filed internal union charges against Newell. At the request of all the parties, Wisconsin Teamsters Joint Council 39 took jurisdiction over all those charges.

Joint Council 39 held an internal union hearing on the charges on August 1, 2003, and on August 14, 2003, the Council issued its decision. In its decision, the Council dismissed the charges filed by Newell and Vought and sustained the charges brought by Russell. Newell was suspended from his union office and membership in Local 662 for five years.

Newell appealed to the General Executive Board of the International Brotherhood of Teamsters ("IBT"). Following an unfavorable decision by the General Executive Board, Newell subsequently dropped his appeal to the IBT Convention and resigned his membership in the IBT.

2

Russell subsequently filed charges against Vought, and Local 662's Executive Board conducted an internal union hearing on September 26, 2003. The Executive Board subsequently suspended Vought for two and one-half years.

Vought appealed to Joint Council 39, which conducted a hearing on January 7, 2004, and on January 28, 2004, denied Vought's appeal. Vought subsequently appealed to the General Executive Board of the IBT but on October 5, 2004, resigned his membership in the IBT. Plaintiff Daniel Alexander, business agent, was never subject to any internal union disciplinary process, but resigned his position in early 2004.

### MOTION TO DISMISS OR FOR PARTIAL JUDGMENT ON THE PLEADINGS

The defendants seek sanctions pursuant to Federal Rule of Civil Procedure 11 for the same reasons cited in its motion to dismiss or for partial judgment on the pleadings. The plaintiffs have not directly responded to the defendants' motion to dismiss; however, the plaintiffs have responded to the motion for sanctions. The court shall accept the plaintiffs' response to the motion for sanctions as a response to the defendants' motion to dismiss.

**Motion to Dismiss Standard**

Dismissal pursuant to Rule 12(b)(6) is proper only when the plaintiff can prove no set of facts that would entitle him to relief. Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also, Walker v. National Recovery, Inc., 200 F.3d 500, 503 (7th Cir. 1999) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). The court must accept the allegations in the complaint as true and will draw all reasonable inferences in favor of the plaintiff. Fields v. Weber Law Firm, 383 F.3d 562, 564 (7th Cir. 2004).

3

**Counts II and III**

The plaintiffs allege in Count II that the defendants violated Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 et. seq. and 29 U.S.C. § 411(a)(5), by removing or expelling the plaintiffs Vought and Alexander from their union positions of business agents without due process and a full and fair hearing. Alexander also alleges that the defendants created a hostile work environment following his support of Newell and thus forced him to resign his position. Additionally, the plaintiffs allege in Count III, that the defendants' conduct additionally violated Section 609 of the LMRDA and 29 U.S.C. § 529.

The defendants argue that Vought and Alexander's claims, set forth in Counts II and III of the complaint, that their terminations from the appointed positions of business agents violated § 101(a)(5), 29 U.S.C. § 411(a)(5), and § 609, 29 U.S.C. § 529, of the LMRDA, are not actionable. Specifically, the defendants argue that the LMRDA protects union membership and not union employment.

The Supreme Court has explicitly held that the LMRDA protects union membership but not union employment. Finnegan v. Leu, 456 U.S. 431, 436, 437-38 (1982). The Court subsequently elaborated on this holding and stated that when an elected union member is removed from union employment, as opposed to being appointed to such a position, the LMRDA may be violated. Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 354-55 (1989). However, at issue in the defendants' motion are simply the removals of Vought and Alexander from their appointed union positions as business agents. Therefore, because Vought and Alexander's union membership was, at most, indirectly affected by their removal from their positions as business agents, Vought and Alexander's claims that their removal violated the LMRDA are without merit and shall be dismissed. See id.; see also Brunt v. SEIU, 284 F.3d 715, 720 (7th Cir. 2002).

4

**Count IV**

The plaintiffs allege that the defendants committed unfair labor practices and violated Sections 157 and 158 of the National Labor Relations Act when they suspended and terminated Vought from his union membership and terminated him from his position as business agent for the Union, retaliated against Alexander for his having represented Vought in a hearing, and suspended Newell from his elected membership and principal office.

The defendants argue that Count IV should be dismissed because the National Labor Relations Board ("NLRB") possesses primary jurisdiction over these claims. Additionally, the defendants argue that Count IV should be dismissed because it was filed beyond the six-month statute of limitations set forth in 29 U.S.C. § 160(b).

Disputes regarding Section 7 and Section 8 of the National Labor Relations Act ("NLRA") are ordinarily within the primary jurisdiction of the NLRB and thus federal courts generally lack jurisdiction over such claims; however, courts may resolve labor law questions when they are collateral to issues in suits brought under independent federal remedies. Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 543 n.4 (1988); Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83 (1982); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959).

> 'The doctrine of primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' United States v. Western Pac. R. Co., 352 U.S. 59, 63-64 [(1956)]. The doctrine is based on the principle 'that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over,' Far East Conference v. United States, 342 U.S. 570, 574 [(1952)], and 'requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary

resort to the agency which administers the scheme,' United States v. Philadelphia Nat. Bank, 374 U.S. 321, 353 [(1963)].

International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 238 (1971) (quoting Local 189, Amalgamated Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 684-685 (1965) (opinion of White, J., announcing judgment)).

The Supreme Court has held that claims that a union violated Section 101(a)(5) of the LMRDA are properly within the jurisdiction of federal courts. Hardeman, 401 U.S. at 237-38. Thus, because this court has jurisdiction over the plaintiffs' claims Section 101(a)(5) claims, this court shall also have jurisdiction over the plaintiffs' NLRA claims if those claims are collateral to the LMRDA claims. See id.; see also, Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 50 (1998) ("To invoke federal jurisdiction when the claim is based in part on a violation of the NLRA, there must be something *more* than just a claim that the union violated the statute.") (emphasis in original).

In the present action, the plaintiffs allege that the defendants violated their rights to speech and assembly, as protected by Section 101(a)(2) of the LMRDA, their protections from improper disciplinary action, as protected by Section 101(a)(5) of the LMRDA, retaliated against the plaintiffs for the plaintiffs' exercise of their rights under the LMRDA, in violation of Section 609 of the LMRDA, and denied the plaintiffs equal rights, in violation of Section 101(a)(1) of the LMRDA. Each of these claims represents an independent basis for this court's jurisdiction. The plaintiffs' claim that the defendants violated Section 7 and Section 8 of the NLRA is collateral but intimately tied to these primary claims in that the plaintiffs are essentially arguing that the same conduct violated two separate federal laws. Under these circumstances, this court considers the plaintiffs' NLRA claims to be appropriately before this court.

Case 2:05-cv-00552-AEG   Filed 02/08/07   Page 6 of 25   Document 87

Nonetheless, the defendants also assert that the plaintiffs' claims are barred by the six month statute of limitations set forth in Section 10(b) of the NLRA, 29 U.S.C. § 160(b). The court finds that the plaintiffs' claims set forth in Count IV of the complaint are time barred and therefore shall be dismissed.

Section 10(b) states that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made." 29 U.S.C. § 160(b).

In response, the plaintiffs provide absolutely no argument to oppose the defendants' contention that their NLRA claims are time barred but instead address only an argument that the defendants are not making—whether the plaintiffs' free speech claims under the LMRDA are time barred. The six month statute of limitation does not apply to the plaintiffs' right to free speech claims under the LMRDA, Reed v. United Transp. Union, 488 U.S. 319, 323 (1989); Clift v. International Union, United Auto., 881 F.2d 408 (7th Cir. 1989), and the defendants do not make the argument that it should. Rather, the defendants argue that only the plaintiffs' NLRA claim (Count IV) is time barred.

In any event, it is undisputed that the plaintiffs did not file their claims within six months of the defendant's alleged violations of § 8 of the NLRA. This lawsuit was filed May 19, 2005 and thus, six months previous would be November 19, 2004. Newell dropped his appeal to the IBT Convention and resigned his membership in the IBT on September 1, 2004. (Answer Ex. I.) This resignation was accepted September 29, 2004. (Reardon Aff. Ex. Q.) As for Vought, on October 5, 2004, Vought also resigned his membership in the IBT effective immediately. This document is stamped as having been received by Local 662 on October 7, 2004. (Answer Ex. H.) The facts relating to Alexander's claims culminated with his January 23, 2004 separation agreement. (Answer Ex. G.) No plaintiff alleges that the defendants did any act that could be considered as having

7

violated § 7 or § 8 of the NLRA after November 19, 2004, and thus this court need not undertake the fact intensive analysis of determining precisely when the six-month period began to run. Thus, the plaintiffs' NLRA claims are time barred and shall be dismissed. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 155 (1983)).

**Count VI**

Alexander alleges that the defendants violated Wisconsin common law when they subjected him to allegedly intolerable working conditions, which in turn compelled him to submit a letter of resignation.

The defendants argue that Count VI should be dismissed because the state law claim is preempted by the LMRDA, which permits termination from appointed union employment, and alternatively, the complaint fails to identify the public policy that the Alexander's termination allegedly violated. Alexander does not respond to the defendants' argument that the LMRDA preempts his state causes of action. Instead, Alexander asserts that constructive discharge is recognized under Wisconsin common law; however, Alexander concedes that his claim may need to be restyled as a wrongful discharge claim.

As for the defendants' argument that Alexander's wrongful discharge is preempted by the LMRDA, neither party has cited nor has the court been able to locate a decision of any court within the Seventh Circuit that has decided this issue. In fact, across the nation very few courts have decided this issue.

The Supreme Courts of California and Montana have both held that the policy codified in the LMRDA of ensuring union democracy and permitting the practice of union patronage preempt state laws regarding wrongful discharge. Screen Extras Guild, Inc. v. Smith, 51 Cal.3d 1017, 800 P.2d 873 (Cal. 1990); Vitullo v. IBEW Local 206, 75 P.3d 1250 (Mont. 2003). However, it is not necessary for this court to decide whether or not the LMRDA preempts Wisconsin law regarding

8

wrongful discharge. Count VI of the complaint is defective because Alexander has failed to allege which well defined public policy his termination allegedly violated, and therefore, Count VI shall be dismissed on that basis. Additionally, without fully understanding which well-defined public policy Alexander alleges was violated with his termination, this court is unable to appropriately consider the question of whether Alexander's claim was preempted by the LMRDA.

> Wisconsin, like many states, adheres to the doctrine of employment-at-will. The doctrine provides that when the terms of employment are indefinite, the employer may discharge an employee for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong. Generally, at-will employees cannot pursue legal claims stemming from routine dissatisfactions with the terms and conditions of employment or an employer's unjustified decision to terminate the employment relationship. Courts will not second guess employment or business decisions, even when those decisions appear ill-advised or unfortunate. This common-law doctrine has been a stable fixture of [Wisconsin] law since 1871.

Strozinsky v. School Dist., 2000 WI 97, ¶33, 237 Wis. 2d 19, 614 N.W.2d 443 (citations and quotation marks omitted). However, the Wisconsin Supreme Court has recognized a narrow public policy exception to this general rule whereby an employee may pursue a claim for wrongful discharge if the employee's discharge "is contrary to a fundamental and well-defined public policy as evidenced by existing law." Brockmeyer v. Dun & Bradstreet, 113 Wis. 2d 561, 573, 335 N.W.2d 834, 840 (1983).

> Plaintiffs seeking relief under this narrow exception must: (1) first identify a fundamental and well defined public policy in their complaint sufficient to trigger the exception to the employment-at-will doctrine; and (2) then demonstrate that the discharge violated that fundamental and well defined public policy. Once the plaintiff satisfies these first two steps, the burden shifts to the employer to show that the discharge actually was sparked by just cause.

Strozinsky, 2000 WI 97, ¶37, 237 Wis. 2d 19, 614 N.W.2d 443 (footnote and citations omitted).

Under Wisconsin law, when an employee did not have an employment contract, the employee must prove the elements of a wrongful discharge action, in addition to the elements of a constructive discharge action in order to prevail after having resigned his employment. See id. at

¶84. In the present case, Alexander has failed to identify the well defined public termination that his alleged constructive discharge violated. Therefore, because of this defect in the complaint, Count VI of the complaint shall be dismissed.

## MOTION FOR SUMMARY JUDGMENT

The defendants present three reasons as to why partial summary judgment should be granted in their favor. First, they argue that the plaintiffs do not have standing to pursue claims under the LMRDA because all the plaintiffs had resigned their union membership at the time the complaint was filed and thus lack standing. Second, the defendants argue that the complaint fails to allege that any of the named defendants did anything that would make them liable under the LMRDA. Third, the decisions of the internal union hearing panels should be accorded deference, the internal union discipline was valid, and the plaintiffs received all the rights to which they were entitled under the LMRDA.

**Summary Judgment Standard**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that  he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323.  The moving party

Case 2:05-cv-00552-AEG   Filed 02/08/07   Page 10 of 25   Document 87

satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**Plaintiffs' Standing**

The defendants argue that the plaintiffs' resignation of their union membership nullifies their standing to bring suit under the LMRDA because the LMRDA requires that the plaintiffs to be union members at the time of the alleged violation and at the time the lawsuit is filed.

The plaintiffs argue that the undisputed fact that they were union members at the time of alleged violations is sufficient to provide them standing to pursue claims under the LMRDA. The plaintiffs point to numerous cases in which courts have found that plaintiffs had standing to sue under the LMRDA after having been expelled from unions. Finally, the plaintiffs argue that the cases cited by the defendants in which courts held that plaintiffs must be members of a union at the time the suit is filed, are distinguishable.

The defendants cite three cases in its brief in support of its motion for summary judgment that the plaintiffs argue are distinguishable. In their reply, the defendants cite an additional case that they argue supports the proposition that union membership at the time the suit is filed is required for standing under the LMRDA.

11

In <u>Federspiel v. Blank</u>, 2002 U.S. Dist. LEXIS 18590 (W.D.N.Y. Sept. 19, 2002) and <u>Hooks v. Truck Drivers, Local 100</u>, 39 Fed. Appx. 309 (6th Cir. 2002), the courts held that the plaintiffs did not have standing to bring an action under the LMDRA because they were not union members at the time of the alleged violations. These cases are distinguishable from the present case because it is undisputed that the present plaintiffs were union members at the time of the alleged violations; it was only after the alleged violations that the plaintiffs resigned their memberships.

In <u>Martinez v. Barasch</u>, 2004 U.S. Dist. LEXIS 12902 (S.D.N.Y. July 12, 2004), the plaintiffs sought relief under Section 501 of the LMDRA. Therefore, jurisdiction was based upon subsection (b) of Section 501 in which standing is extended to any member of a labor organization. The district court held that current membership in the union at the time the suit was filed was required for the plaintiffs to have standing.

However, Section 501 deals with enforcing the fiduciary obligations of labor organization's officers and is not applicable in the present case. Standing in the present case is based upon Section 412, which extends standing to all "persons," not just members, whose rights have been infringed by violations of the LMDRA. Granted, union membership is required to be entitled to the rights guaranteed by the LMDRA; however, based upon a plain reading of the sections under which the plaintiffs seek relief, it is clear to this court that union membership at the time of the alleged violations is sufficient. Union membership need not also exist at the time the suit is filed.

Finally, in reply the defendants cite <u>Carroll v. Associated Musicians of Greater New York</u>, 235 F. Supp. 161, 164 (S.D.N.Y. 1963), in which the court held that the plaintiff's voluntary relinquishment of union membership defeated his claim that the defendant violated § 411(a)(4). The court in that case did not hold that subsequent relinquishment of membership negated a plaintiff's standing to bring suit under the LMDRA, and thus, <u>Carroll</u> is of no benefit to the present defendants.

Having reviewed the applicable case law and the plain text of the sections of the LMDRA at issue in the present case, this court finds no support for the proposition that union membership is required at the time the suit is brought. The claims that the present plaintiffs pursue here require only that the plaintiffs were union members at the time of the alleged violations and therefore, the defendants' motion for summary judgment on the basis that the plaintiffs lack standing, shall be denied.

**Liability of Individually Named Defendants**

The defendants argue that the complaint lacks sufficient allegations that would permit the sixteen named individuals to be sued in their individual capacities. A union official may be individually liable under Section 102 if he "aids, abets, instigates, or directs a wrongful use of union power to deprive a member of his rights under § 101." Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1246 (2d Cir. 1979).

The plaintiffs individually name sixteen union officials in their individual capacities: Fred Gegare, Paul Lovinus, Michael Spencer, Reggie Konop, Tony Cornelius, Sebastian Busalacchi, Gerald Jacobs, Wayne Schultz, David Reardon, Rick Skutak, John Kaiser, Vicki Kramer, Tim Wentz, Robert Russell, James Dawson, and Randy Arndt. For the sake of convenience, hereinafter each shall be referred to by only his or her last name. It should be noted that the plaintiffs would voluntarily agree to have their claims against Spencer, Konop, Schultz, Wentz and Ardnt dismissed without prejudice on the ground that insufficient discovery has been conducted in the case. Notwithstanding the plaintiffs' concession, the court will address this portion of the defendants' motion as presented.

The complaint contains the following specific allegations relating to the individually named defendants. Plaintiff Newell fired defendant Russell on or about July 1, 2003 and about ten days later, Russell filed internal union charges against Newell. The plaintiffs allege that the charges filed

against Newell by Russell "were based on conspiracy, intimidation and failure to fulfill fiduciary responsibilities." (Compl. ¶49.) On about August 1, 2003, the Council convened a hearing to address Russell's charges. Also at this hearing, the Council addressed charges made by plaintiffs Newell and Vought against defendants Reardon, Kaiser, Skutak, and Russell. At this hearing, Russell was represented by Reardon and called Reardon, Kramer, Kaiser, and Skutak as witnesses. The hearing panel was chaired by Gegare, President of the Teamsters Joint Council No. 39. The plaintiffs also allege that Gegare is a close friend of Reardon and has professional ties to him; additionally he is allegedly a "longtime antagonist" of Newell. (Compl ¶45.)

Serving on the hearing panel were Gegare, Lovinus, Spencer, Konop, Cornelius, Busalacchi, and Jacobs. As a result of this hearing, Newell was suspended from his officer position and from membership in the union for five years. Shortly after this hearing, Reardon, Kaiser, Skutak, and Jacobs were appointed to serve in various union positions.

On about August 15, 2003, Vought was terminated from his union position "by action of Defendant Reardon and the Local 662 Executive Board." (Compl. ¶53.) Russell then filed internal union charges against Vought, making the same allegations that had been levied against Newell. The hearing panel consisted of Reardon, Kaiser, Skutak, Kramer, Wentz, Dawson, and Arndt. The hearing panel subsequently suspended Vought from his union office and from membership in the union for two and one-half years. The appeal hearing panel, which affirmed the earlier decision, consisted of Lovinus, Cornelius, and Schultz.

At the appeal hearing, Vought was represented by Alexander. The plaintiffs allege that once it was learned that Alexander was going to be representing Vought, "Reardon, and other named Defendants who are supporters of Mr. Reardon, began issuing threats to Plaintiff Alexander." (Compl. ¶62.) Additionally, the plaintiffs allege that "[o]n or about January 7, 2004, Defendant Reardon approached Plaintiff Alexander and began threatening and intimidating him because of his

representation of Mr. Vought on that date." (Compl. ¶63.) Two days later, Reardon allegedly ordered Alexander into a private meeting and as a result of this meeting, Alexander's working conditions were severely altered so as to make his continued employment with the defendants unbearable.

The court has not been directed to any authority that would indicate that merely serving on the hearing panel that opted to take the adverse action of which the plaintiff complains is sufficient to render that union official individually liable for his or her actions. Absent additional factual allegations, the mere fact of service on the hearing panel is insufficient. The only allegation levied at defendants Spencer, Konop, Busalacchi, Lovinus, Cornelius, Schultz, Wentz, Dawson, Jacobs, and Arndt is that they served on the hearing panels that addressed the various union charges filed in this matter. Therefore, summary judgment shall be granted in favor of these defendants and they shall be dismissed from this action. Additionally, for reasons explained below, Gegare shall also be dismissed as a defendant in this action.

Defendants Kramer, Kaiser and Skutak are also related to this litigation largely by the fact that they served on hearing panels. However, these defendants are distinguishable in that they served on Vought's hearing panel while facing union charges filed by Vought. These defendants also appeared as witnesses for Russell in a hearing where Russell defended charges brought by Newell and Vought, and they participated in the termination of Vought from his position as business agent. These additional factual allegations render summary judgment inappropriate.

Similarly, there are sufficient factual allegations levied against Reardon and Russell to make summary judgment in their favor inappropriate.

**Discipline of Newell and Vought**

The defendants argue that Newell and Vought were properly disciplined in accordance with the LMDRA and therefore do not present a cognizable claim to this court. First, the defendants

Case 2:05-cv-00552-AEG   Filed 02/08/07   Page 15 of 25   Document 87

argue that decisions of internal union tribunals should be accorded deference. Second, the defendants argue that the internal disciplinary proceedings fully complied with Section 101(a)(5) of the LMDRA. Finally, the defendants argue that there was no violation of Section 101 or Section 609 because there was some evidence to charge and convict Newell and Vought.

Section 101(a)(5) states: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). The plaintiffs argue that summary judgment is inappropriate because there is a factual dispute as to whether the discipline process conformed with these requirements.

In regard to the first requirement of § 101(a)(5) that union members be served with written specific charges, Newell argues that he was not served with written specific charges, because the charges he was served with did not conform with the IBT's constitution. Vought raises these same arguments as to the charges made relating to his suspension from union membership and his removal as Recording Secretary. Additionally, Vought alleges that he was never presented with written charges regarding his removal as business agent.

The specificity in the charges urged by the plaintiffs finds no support in the case law, i.e. that the LMRDA requires that the written charges conform to the union's written constitution. All that is required by the LMRDA regarding the form charges must take is that the charges be specific and in writing. Written charges need not be as specific as a criminal indictment. Curtis v. International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators, 687 F.2d 1024, 1027 (7th Cir. 1982) (citing cases). They need only contain "a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action," id. at 1028 (quoting Hardeman, 401 U.S. at 245. It has been held that a union's failure to follow its internal rules does

not allow the recovery of damages. Id. at 1029. In other words, for a plaintiff to prevail on a court challenge to a union meeting, he must demonstrate how the union's failure to comply with its internal policies impaired a right guaranteed by the LMRDA. Id. at 1030.

Therefore, to be able to proceed on a claim that the written charges were deficient and violated the LMRDA, the disciplined union "member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense." Frye v. United Steelworkers of Am., 767 F.2d 1216, 1223 (7th Cir. 1985) (citing Hardeman, 401 U.S. at 245). Newell and Vought fail to present any evidence that demonstrates how being served with written charges that did not conform to the IBT's constitution misled or otherwise prejudiced them in their presentation of a defense and therefore fail to present a cognizable claim regarding this complaint.

Addressing the second requirement of § 101(a)(5) that union members be provided adequate time to prepare, in their brief opposing summary judgment, the plaintiffs do not argue that they were not provided a reasonable time to prepare a defense. This is alleged in the complaint, but the plaintiffs have failed to present any facts to indicate that they were not provided sufficient time to prepare their respective defenses. At most, there may be some evidence in the record that may indicate that the defendants did not provide the plaintiffs as much time as is called for under the union's internal rules. However, as explained above, courts have repeatedly held that a union's failure to follow its internal rules does not constitute of violation of the LMRDA. Curtis, 687 F.2d at 1029.

Turning to the third requirement of § 101(a)(5), Newell argues that he was denied a full and fair hearing; first, because he was not allowed to present evidence regarding alleged misrepresentations made by Russell concerning a health plan for Clark County; and second, because the tribunal was not impartial in that Russell presented false evidence about Newell concerning Newell's attempt to implicate Union President Reardon in wrongdoing. Vought argues

17

that he was denied a full and fair hearing regarding his removal from the position of business agent because he was terminated by way of a phone poll that was conducted in violation of the local union's bylaws. As for his suspension from the union and from his position as Recording Secretary, Vought argues that the Executive Board that heard the charges brought by Russell was biased against him.

Ordinarily the decision of a union body is afforded deference and will not be upset by a reviewing court unless the decision was not supported by at least some evidence. <u>Hardeman</u>, 401 U.S. at 245-46; <u>see also</u> <u>English v. Cowell</u>, 969 F.2d 465, 471 (7th Cir. 1992) (quoting <u>Howard v. United Asso. of Journeymen & Apprentices</u>, 560 F.2d 17, 21 (1st Cir. 1977)) ("The LMRDA 'is not a license for judicial interference in the internal affairs of a union.'"). Again, as discussed above, a union's mere failure to abide by its internal policies does not constitute a violation of the LMRDA. Additionally, a federal court is not empowered to review a union's decision to determine if the conduct for which the member was disciplined was in fact a violation of the union's rules. <u>Hardeman</u>, 401 U.S. at 242-43, 244. In this regard, the court does not regard Newell's claim that he was not allowed to present certain evidence at the hearing to be a cognizable cause of action.

Vought has provided the court with copies of the written decisions of the Executive Board of the local union (Vought Aff. Ex. 12) and the hearing panel appointed by the Joint Council (Vought Aff. Ex. 18). Vought has also provided the court with transcripts of these hearings. (Vought Aff. Exs. 11; 16.) The hearing panel relied upon the evidence adduced at the hearing before the Executive Board and affirmed the Executive Board's decision. Having reviewed the documents submitted, it is clear that the union's action against Vought was supported by some evidence. Similarly, Newell has provided the court with a copy of the Joint Council hearing panel's decision, (Newell Aff. ex. 15) as well as a transcript of the hearing, (Newell Aff. ex. 14). Having reviewed these documents, it is clear that the union's decisions were supported by some evidence.

Case 2:05-cv-00552-AEG   Filed 02/08/07   Page 18 of 25   Document 87

Nonetheless, the plaintiffs also allege that the hearing panel was not impartial. A hearing before a panel that is not impartial violates the LMRDA, regardless of whether the panel's conclusions are supported by evidence. Curtis, 687 F.2d at 1030 (citing Tincher, 520 F.2d at 854). Newell argues that the chair of hearing panel was not impartial because Newell had a long adversarial history with the hearing chairman Gegare. Specifically, Newell argues that in 1997, Gegare attempted to terminate Newell's union membership. Additionally, Gegare was a friend of Reardon and when attempting to terminate Newell's membership in 1997, Gegare told Reardon to "keep an eye on" Newell to make sure that Newell did not "get out of line." (Newell Aff. ¶34.) Newell argues that the panel's lack of impartiality is demonstrated by the fact that the panel refused to hear information regarding Newell's accusations against Russell and disregarded the testimony of Newell's independent witnesses.

A union member alleging that a hearing panel was biased must make specific factual allegations from which the operation of bias can be inferred; merely alleging a history of conflict between the union member and its governing body is insufficient. Frye, 767 F.2d at 1221.

The defendants argue that Newell has failed to sufficiently demonstrate the Gegare was biased against Newell. For example, although Newell points to the fact that Gegare attempted to terminate Newell's union membership in 1997, Newell subsequently supported Gegare in the most recent Joint Council elections, supported the Hoffa slate, which included Gegare, in the 1998 and 2001 IBT elections, and nominated Gegare for President of Joint Council 39. (Gegare Aff. ¶4.) Gegare further points to the fact that he, along with the other Hoffa delegates, supported Newell in his appeal to the IBT Convention from discipline approved by a prior IBT administration. (Id.) Newell acknowledges that he supported the Hoffa slate in 2001 but states that he did so because there were no other acceptable alternatives and alleges that he voted for each Hoffa slate candidate

except for Gegare. (Gegare Aff. ¶34.) Newell does not contradict or otherwise challenge Gegare's other assertions of Newell's support.

Newell's allegation of a conflict between Newell and Gegare that occurred many years earlier is insufficient to raise a reasonable inference of bias. Bias is a particularly inappropriate inference because of the undisputed evidence indicating that since the 1997 incident Newell has, at least to some degree, been a supporter of Gegare. Newell also alleges that Gegare was a political rival; however, the evidence indicates the contrary. Additionally, the fact that Gegare is an associate or friend of Reardon is again insufficient. The only specific allegation that Newell makes with respect to Gegare is that Gegare allegedly told Reardon in 1997 to "keep an eye on" Newell. Again, these allegations are too temporally removed to bear relevance to an inference of bias. Therefore, Newell's claims that the hearing panel was biased against him are without merit and thus, because there was evidence to support the union's conclusion, summary judgment must be granted in favor of the defendants on Newell's claim, set forth in Count II of the complaint, that he was not provided a full and fair hearing. Additionally, because Gegare is connected to this case simply by his alleged conflicted service as the chair of the council addressing charges against Newell, the dismissal of this cause of action demands that Gegare be dismissed as a defendant.

Vought argues that the panel that suspended him from his union membership was biased because Vought had previously filed union charges against a majority of the union panel. "[A]s a matter of fundamental due process, it is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing." Tincher v. Piasecki, 520 F.2d 851, 855 (7th Cir. 1975). However, if a union member brought charges against a committee member simply to disqualify him from serving on the committee, the union member is not entitled to challenge the composition of the committee. Id. The defendants argue that the timing of Vought's charges against the members of the Executive Board

Case 2:05-cv-00552-AEG   Filed 02/08/07   Page 20 of 25   Document 87

indicate that Vought filed the charges solely in an attempt to disqualify those Executive Board members.

Vought's termination from the position of business agent was effective August 15, 2003. On August 29, 2003, Vought's termination was ratified and Russell demanded that Vought resign as Recording Secretary or face charges. On September 2, 2003, Vought said that he would not resign and on September 3, 2003, Vought filed charges against Reardon, Skutak, Kramer, and Kaiser regarding their conduct in removing Vought from his position as business agent. On September 5, 2003, Russell filed charges against Vought. On September 26, 2003 the local Executive Board panel conducted a hearing regarding the charges against Vought. Kaiser served as the chairman and Reardon, Skutak, and Kramer, served on the hearing panel along with Dawson, Wentz, and Arndt.

Although Vought knew that he was likely to face charges, his filing of charges occurred before formal charges were made against him. Moreover, the charges Vought made against Reardon, Skutak, Kramer, and Kaiser contain prima facie validity which precludes this court from concluding that Vought filed them in an effort to improperly force disqualification of panel members. Therefore, under the facts presented at this stage in the case, it would be inappropriate to grant summary judgment in favor of the defendants on the ground that Vought filed the charges against Reardon, Skutak, Kramer, and Kaiser simply to force their recusal from the hearing panel. Therefore, there exists a dispute of material fact as to whether Vought was afforded a full and fair hearing, and thus the defendants' motion for summary judgment on this claim shall be denied.

Additionally, the plaintiffs argue that dismissal of all of the plaintiffs' LMRDA claims would be inappropriate because they alleged that the defendants violated other rights guarantied by the LMRDA than those enumerated in section 101(a)(5). The defendant's have not motioned for summary judgment regarding these other claims and therefore the court shall not address these claims.

21

By way of summary, in regard to the defendants' motion for summary judgment, the court concludes as follows: (1) the plaintiffs have standing to pursue this action; (2) summary judgment shall be granted regarding the plaintiffs' claims against Spencer, Konop, Busalacchi, Lovinus, Cornelius, Schultz, Wentz, Dawson, Jacobs, and Arndt in their individual capacities and they shall be dismissed as defendants in this action; (3) summary judgment shall be granted regarding Newell and Vought's claim that they were not served with specific charges and on their claim that they were not provided with sufficient time to prepare their defenses; (4) summary judgment will be granted on Newell's claim that he was not provided a hearing by an impartial tribunal, and thus, the defendant Gegare will be dismissed as a defendant in this case; and (5) summary judgment will be denied in regard to Vought's claims concerning the impartiality of the union panel.

Therefore, the only § 101(a)(5) claim that remains for further proceedings as a result of the defendants' motion for summary judgment is Vought's claim that he was not provided a hearing before an impartial tribunal.

## MOTION FOR RULE 11 SANCTIONS

The defendants seek an order that the plaintiffs and the plaintiffs' attorney pay the defendants' costs and attorney's fees incurred in researching and filing the motion to dismiss pursuant to Federal Rule of Civil Procedure 11.

"Rule 11 is not a fee-shifting statute in the sense that the loser pays. It is a law imposing sanctions if counsel files with improper motives or inadequate investigation." Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 932 (7th Cir. 1989). When a district court determines that Rule 11(b) has been violated, the court may, but is not required to, impose sanctions. Simply because the plaintiffs' claims turned out to be groundless does not necessarily mean that sanctions pursuant to Rule 11 are appropriate. Beverly Gravel, Inc. v. DiDomenico, 908 F.2d 223, 227 (7th Cir. 1990) (citing Brown v. National Bd. of Medical Examiners, 800 F.2d 168, 173 (7th Cir.1986)).

Although the court has granted the defendant's motion to dismiss as to certain counts and certain causes of action in the complaint, the court does not believe that the plaintiffs' claims raised in Counts II, III, and IV were so lacking in merit so as to constitute a violation of Rule 11(b). Specifically, this court does not believe that the law regarding the plaintiffs' claims raised in Counts II, III, and IV was sufficiently clear that reasonable investigation would have necessarily clearly indicated that the plaintiffs' claims were without merit.

However, as for Count VI, this court believes that reasonable investigation would have revealed that under Wisconsin law a plaintiff is required to identify the well defined public policy that an employee's constructive discharge violated in order to state a claim for wrongful constructive termination when the employee was not employed pursuant to a contract. Thus, by including this defective count in the complaint, plaintiffs' counsel violated Rule 11(b)(2).

The conduct of plaintiffs' counsel is aggravated by the fact that when given the opportunity to respond to the defendants' motion to dismiss and for sanctions, the plaintiffs submit only the barest response. And rather than identifying the well defined public policy that was violated by Alexander's termination or arguing that there is no such requirement under Wisconsin law, the plaintiffs simply argue that constructive discharge is recognized under Wisconsin law. There is no dispute that the doctrine of constructive discharge is recognized under Wisconsin law, but that is not the issue. Identifying public policy is and here, the plaintiffs failed to offer any argument to support Count VI.

Notwithstanding the violation of Rule 11(b)(2), the court does not believe that this conduct was sufficiently egregious so as to warrant the imposition of a sanction. Had the plaintiffs' complaint consisted of just this one count instead of having it be one of many, several of which do have merit, the court's view of imposing Rule 11 sanctions would be different. As it is, the court believes that the effort, costs, and time expended by the defendants in the defense of this one count

23

was reasonably minimal, at most. Therefore, this court exercises its discretion and declines to impose a sanction despite the violation of Rule 11(b)(2).

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss, [docket number 31], is **granted** at to Vought and Alexander's claims, as set forth in Counts II and III regarding Vought and Alexander's loss of their appointed positions as union business agents; **granted** as to Count IV because the plaintiffs' claims were not timely filed and therefore Count IV of the complaint is hereby dismissed; and **granted** as to Count VI because Alexander has failed to identify the well defined public policy that his alleged constructive discharge violated and therefore Count VI of the complaint is hereby dismissed.

**IT IS FURTHER ORDERED** that the defendants' motion for partial summary judgment, [docket number 47], is **denied** as to defendants' challenge that the plaintiffs lack standing; **granted** as to plaintiffs' claims that defendants Spencer, Konop, Busalacchi, Lovinus, Cornelius, Schultz, Wentz, Dawson, Jacobs, and Arndt may be held individually liable, and as such, defendants Spencer, Konop, Busalacchi, Lovinus, Cornelius, Schultz, Wentz, Dawson, Jacobs, and Arndt are hereby dismissed from this case; **denied** as to plaintiffs' claims against defendants Kramer, Kaiser, Skutak, Reardon, and Russell, and the case shall proceed against each individually; **granted** as to Newell's claim that he was not provided a full and fair hearing, and therefore, Newell's claim against Gegare is hereby dismissed and he is dismissed from this case; and, **denied** as to Vought's claims that he was not provided a full and fair hearing.

**IT IS FURTHER ORDERED** that the defendants' motion for sanctions, [docket number 32], is **denied**.

**IT IS FURTHER ORDERED**, that the court shall conduct a telephone scheduling conference on **February 21, 2007**, at **9:00 a.m.** to discuss further proceedings on the following:

24

Count I, Count II as limited to the question of whether or not Vought and Alexander were improperly disciplined in violation of § 101(a)(5) of the LMRDA, Count III, and Count V.

Dated at Milwaukee, Wisconsin, this <u>8th</u> day of February, 2007.

<u>s/AARON E. GOODSTEIN</u>
United States Magistrate Judge

25