# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES NEWELL, DANIEL VOUGHT,
and DANIEL ALEXANDER,

                     Plaintiffs,

           v.                              Case No. 05-C-552

STATE OF WISCONSIN TEAMSTERS
JOINT COUNCIL NO. 39, et. al.,

                     Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

### I. PROCEDURAL HISTORY

On May 19, 2005, James Newell ("Newell"), Daniel Vought ("Vought"), and Daniel Alexander ("Alexander") filed a complaint against the State of Wisconsin Teamsters Joint Council No. 39 ("Joint Council 39"), the Teamsters General Union Local No. 662 ("Local 662"), as well as sixteen individuals associated with those organizations. The parties have all consented to the full jurisdiction of a magistrate judge.

On October 13, 2005, the defendants filed a motion to dismiss or in the alternative for a partial judgment on the pleadings. Accompanying this motion was a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. On November 29, 2005, the defendants filed a motion for summary judgment.

On February 8, 2007, the court granted the defendants' motion for partial judgment on the pleadings, dismissing at least portions of counts II, III, IV, and VI of the complaint, granted in part

the defendants' motion for partial summary judgment, ordered ten defendants who were named in their individual capacities dismissed from the complaint, and granted the defendants' motion for summary judgment as to Newell's claim that he was denied a full and fair hearing and thereby dismissed another individually named defendant from the complaint. The court further found that the plaintiffs violated Rule 11(b)(2) in bringing one count of the complaint, but the court determined that sanctions were inappropriate.

During a telephone scheduling conference conducted on February 21, 2007, the plaintiffs requested time to amend the pleadings. The court and counsel for the defendants noted that this case was already roughly two-years old, and discovery had not yet been completed. Nonetheless, the court ordered that any motions to amend the pleadings were to be filed by April 1, 2007. On March 30, 2007, the plaintiffs filed a motion to amend their complaint, to which the defendants filed a brief in opposition and the plaintiffs replied. On June 26, 2007, the court denied the plaintiffs' motion to amend the complaint.

On July 5, 2007, the plaintiffs filed a motion for partial relief, requesting that the court reconsider its denial of the plaintiffs' motion to amend its complaint only as it relates to a claim for punitive damages. The court denied this motion on September 28, 2007.

On December 1, 2007, plaintiff Vought filed a motion for summary judgment, (Docket Nos. 125, 126), to which the defendants have responded, (Docket No. 148), and Vought has replied. (Docket No. 154). On December 3, 2007, the defendants filed their own motion for summary judgment, (Docket Nos. 132, 133), to which the plaintiffs have responded, (Docket No. 141, corrected document refiled as Docket No. 164). On January 22, 2008, the defendants submitted a reply. (Docket No. 156.) The pleadings on the parties' motions for summary judgment are closed and the matters are ready for resolution. A final pretrial conference is scheduled for April 21, 2008 and a jury trial is scheduled to commence on May 5, 2008.

## II. FACTS

Since the germane facts presented by the parties have been discussed in prior decisions, the following simply highlights the operative events that resulted in this litigation. The court will discuss additional facts as needed.

Plaintiff James Newell was Secretary-Treasurer of the Teamsters Local 662. In July of 2003, Newell discharged Bob Russell ("Russell"), one of the Local 662's appointed business agents. However, the Union's Executive Board refused to approve the discharge of Russell, and Russell was ordered reinstated with back pay.

Following this, Newell and plaintiff Daniel Vought, who was Recording Secretary and business agent, filed internal union charges against Executive Board member defendants Dave Reardon ("Reardon"), Rick Skutak ("Skutak"), and John Kaiser ("Kaiser"). Russell in turn filed internal union charges against Newell. At the request of all the parties, Wisconsin Teamsters Joint Council 39 took jurisdiction over all those charges.

Joint Council 39 held an internal union hearing on the charges on August 1, 2003, and on August 14, 2003, the Council issued its decision. In its decision, the Council dismissed the charges filed by Newell and Vought and sustained the charges brought by Russell. Newell was suspended from his union office and membership in Local 662 and the International Brotherhood of Teamsters ("IBT") for five years.

Newell appealed to the General Executive Board of the IBT. Following an unfavorable decision by the General Executive Board, Newell subsequently dropped his appeal to the IBT Convention and resigned his membership in the IBT.

Russell subsequently filed charges against Vought, and Local 662's Executive Board conducted an internal union hearing on September 26, 2003. The Executive Board suspended Vought for two and one-half years.

Case 2:05-cv-00552-AEG   Filed 02/21/08   Page 3 of 29   Document 165

Vought appealed to Joint Council 39, which conducted a hearing on January 7, 2004, and on January 28, 2004, denied Vought's appeal. Vought subsequently appealed to the General Executive Board of the IBT but on October 5, 2004, resigned his membership in the IBT. Plaintiff Daniel Alexander, business agent, was never subject to any internal union disciplinary process, but resigned his position in early 2004.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## IV. VOUGHT'S MOTION FOR SUMMARY JUDGMENT

Vought is the only plaintiff seeking summary judgment and he seeks such relief only with respect to his claims against defendant Local 662. All defendants have filed their own motion for summary judgment that, in part, deals with Vought's claims. For the sake of clarity, the court shall address here the defendants' motions for summary judgment as they are relevant in opposition to Vought's motion.

### A. Exercise of LMRDA Rights

Section 101(a)(1) and (2) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") state:

> (a) (1) Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

> (2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411.

Vought alleges that his rights to free speech and assembly, see §101(a)(2), and to participate in deliberations relating to and vote upon the business of the union, see §101(a)(1), under the

LMRDA were violated when he was disciplined by Local 662 pursuant to the charges brought by Russell. Vought alleges that Russell was acting as an agent for Local 662, and thus defendant Local 662 is liable for Russell's actions. (Docket No. 154 at 11-12.) Additionally, Vought argues that Local 662 violated §101(a)(1) and (2) when it "ratified" Russell's charges by disciplining Vought based upon those charges. (Docket No. 154 at 11-12.) The court will refer to these allegations as Vought's "protected rights" claim.

As explained below, the court finds that Russell was not acting as an agent for Local 662 when he filed the relevant charges against Vought, and under the circumstances presented in this case, the question of ratification is beyond the appropriate purview of this court. Further, the court finds that Vought bringing union charges found to be false by the union is not a freedom of speech right protected under the LMRDA, and therefore the court shall deny Vought's motion and grant the defendant's motion for summary judgment with respect to these counts of the complaint.

### 1. Russell as an Agent for Local 662

"Unions, like corporations or other artificial entities, can act only through their agents. Under general principles of agency, a union can be liable if its officers and agents actively participate in unlawful conduct." Shimman v. Frank, 625 F.2d 80, 95 (6th Cir. 1980) (citing Morrissey v. National Maritime Union of America, 544 F.2d 19, 25 (2d Cir. 1976); Riverside Coal Co. v. U.M.W., 410 F.2d 267, 270-72 (6th Cir. 1969)). Agency for alleged violations under the LMRDA is determined by applying common law principles of agency. See, e.g., Aguirre v. Automotive Teamsters, 633 F.2d 168, 172 (9th Cir. 1980). For Local 662 to be liable for the actions of Russell as its agent, Vought must prove that Russell's actions fell within the scope of his employment with Local 662, or that Local 662 subsequently ratified Russell's actions. See, e.g., Serafinn v. Int'l Bhd. of Teamsters, Local Union No. 722, 2007 U.S. Dist. LEXIS 40731 (N.D. Ill. 2007).

Russell was employed as a business agent for Local 662. Thus, clearly, Russell was an agent for Local 662 for certain purposes, e.g., as is relevant to this litigation, negotiating with Clark County. But not every action undertaken by Russell, even if it was related to the affairs of the union, was done as an agent of the union. From a review of the charges Russell brought against Vought, which are contained in the record as deposition Exhibit 46, it is the conclusion of this court that Russell brought these charges in his personal individual capacity as a union member and not in his official capacity as an agent of the union. First, the charges begin, "The undersigned *in my capacity as a member* of Teamsters Local 662, hereby preferres (sic) charges against Dan Vought . . . ." (Dep. Ex. 46) (emphasis added.) Second, regardless of this explicit conscious delineation between Russell's role as a union member and a union agent, the facts alleged in Russell's charges make clear that Russell brought charges in his personal individual capacity and not as an agent of the union. Russell's charges were in response to Newell and Vought's efforts to terminate Russell's employment by use of purportedly false or misleading testimony. This was a personal threat to Russell's livelihood and, at best, minimally and indirectly related to the affairs of the union as a whole. Thirdly, Vought presents no evidence to indicate that it was within the authority of a business agent to bring charges against a union member on behalf of the union.

### 2. Ratification

Thus, the court turns to the question of whether the union subsequently ratified Russell's actions. The Executive Committee of Local 662 subsequently sustained Russell's charges and imposed discipline against Vought. However, this action alone is insufficient to impose liability upon Local 662. Rather, a union shall be liable only if it imposed discipline upon a plaintiff union member with full knowledge that it was part of an overall scheme to violate the plaintiff's rights under the LMRDA. Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union, 817 F.2d 967, 973 (2d Cir. 1987).

Mere allegations that the Executive Committee of Local 662 acted with the requisite state of mind are insufficient. Id. at 973. Rather, to survive summary judgment the plaintiff's claim must be supported by specific factual allegations from which a reasonable finder of fact could infer improper motive.

Vought fails to present evidence beyond mere allegations that would permit a reasonable finder of fact to conclude that the Executive Committee of Local 662 acted with the requisite state of mind. Further, for the reasons set forth below, the court finds that under the facts presented in this case it is beyond this court's purview to inquire into the motives of the Executive Committee of Local 662, and therefore shall grant the defendants' motion for summary judgment with respect to this claim.

### 3. Conduct Not Protected Under the LMRDA

In addressing Vought's claim that he was exercising rights protected under the LMRDA, the parties have not cited, and the court has been unable to locate, a case from any federal court addressing the factual issue raised in this case, i.e., a union member is charged by a union official and subsequently disciplined for levying allegedly false charges against that union official and terminating the employment and union membership of that union official based upon false charges. An analogous case this court has been able to locate is Salzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963), wherein the Second Circuit held that a union could not discipline a union member for allegedly libelous statements he made regarding the president of the local union. Id. at 446. The court held that the question of whether the statements were in fact libelous was immaterial to the question of whether the plaintiff's right to free speech under the LMRDA was violated; the LMRDA safeguards a union member's ability to speak out on matters affecting the union without fear of reprisal. Id. at 452. Salzhandler, the elected financial secretary for a local union, uncovered what he believed to be evidence of financial impropriety on the part of the union president and thus

distributed a flyer to union members outlining his allegations and referring to the president as a thief, bum, and a variety of other pejorative terms. Id. at 446-47. The union president filed internal union charges against Salzhandler, which were sustained after a hearing, and Salzhandler was removed from his elected position and prohibited from participating in the affairs of the union for five years. Id. at 447-48.

The court distinguished Beauharnis v. Illinois, 343 U.S. 250 (1952), a case addressing free speech under the First Amendment where the Supreme Court upheld a criminal libel statute over First Amendment challenge on the basis that judicial review of prosecutions prevented abuses, because the union discipline process does not offer "impartial review." Salzhandler, 316 F.2d at 450. The Second Circuit continued by noting that the union discipline process involved union officials rather than judges, the hearing panel was unfamiliar with the intricacies of free speech, and its procedures were "peculiarly unsuited for drawing the fine line between criticism and defamation." Id. The Second Circuit held that a blanket rule of prohibiting discipline based upon allegedly libelous statements was the result most in line with Congress' intent behind the LMRDA, rather than permitting a de novo review in federal court of whether the allegations were, in fact, libelous. Id. Only statements that undermine the "responsibility of every member toward the organization as an institution" or "would interfere with [the union's] performance of its legal or contractual obligations," 29 U.S.C. § 411(a)(2), are disciplinable. Salzhandler, 316 F.2d at 450.

For the numerous reasons set forth below, this court finds Salzhandler distinguishable and concludes that its apparent blanket prohibition against union discipline for even slanderous statements does not apply in the present case. Most significantly, Vought's speech came in the form of the official charges against Russell and his related efforts to terminate Russell's employment; unlike Salzhandler, Vought was not merely voicing his concerns to the membership of the union, e.g. distributing flyers, making speeches, etc.

Case 2:05-cv-00552-AEG   Filed 02/21/08   Page 9 of 29   Document 165

The levying of formal disciplinary charges is quite distinct from the pure speech of pamphleting at issue in Salzhandler. As this case makes clear, internal union charges can have a significant punitive effect in that they may result in a union member being denied his livelihood for a number of years whereas an action such as pamphleting, picketing, or speaking out at a union meeting will have, at best, an indirect effect upon such substantial rights, and ordinarily only then as a result of the union democratic process. The loss of union employment, like the loss of any job, will obviously have significant implications and so too, and perhaps more so, will expulsion from a union. This court has been unable to locate any case wherein the Salzhandler rationale was extended to a situation where a union member brought formal union charges against a union official. See, e.g., Fulton Lodge No. 2 of International Asso. of Machinists & Aerospace Workers v. Nix, 415 F.2d 212, 217 fn. 14 (5th Cir.-OLD 1969) (discussing the variety of circumstances where the Salzhandler rationale has been applied).

Although "the speech and assembly protections of § 101(a)(2) are not coextensive with that of the First Amendment," Teamsters Joint Council No. 42 v. International Bhd. of Teamsters, 82 F.3d 303, 305 (9th Cir. 1996) (citing Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1475 (9th Cir. 1992)), in discerning the scope of the LMRDA's free speech guaranty, it is helpful to turn to First Amendment jurisprudence for guidance, see Finnegan v. Leu, 456 U.S. 431, 435 (1982) (stating Title I of the Act, 29 U.S.C. §§ 411-415, was "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution); Shimman v. Miller, 995 F.2d 651, 653 (6th Cir. 1993) ("[A] court's inquiry under § 411 is guided by First Amendment free speech principles."); Knox County Local, Nat'l Rural Letter Carriers' Ass'n v. National Rural Letter Carriers' Ass'n, 720 F.2d 936, 938 (6th Cir. 1983) (Title I of the Act "is modeled after the First Amendment and guarantees to members the right of free speech and assembly, and the right to participate in union deliberations."); Aikens v. Abel, 373 F. Supp. 425, 433 (W.D. Pa. 1974)

("Section 101(a) (2) is analogous to the first amendment in guaranteeing the principles of free speech and assembly in union affairs."); see also United Steelworkers of Am. v. Sadlowski, 457 U.S. 102, 109-10 (1982). It is well-established that the First Amendment protects an individual's right to speak out against a public official even in harsh terms. New York Times Co. v. Sullivan, 376 U.S. 254, 271 (1964). Thus, the holding in Sullivan is in line with the holding in Salzhandler. However, this free speech protection does not include the right to file a frivolous lawsuit or engage in sham litigation. See, e.g., Bill Johnson's Restaurants, Inc., v. N.L.R.B., 461 U.S. 731, 743 (1983). Applying these general principles to the protection of free speech under the LMRDA, it is the conclusion of this court that permitting unions to discipline union members for filing frivolous charges will not undermine the protections that Congress sought to establish for union members when it passed the LMRDA.

This conclusion is consistent with the proviso contained in the LMRDA stating "that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution." 29 U.S.C. §411(a)(2). "The 'reasonableness' standard . . . is a legacy of legislative compromise which leaves the balancing of the institutional interests and individual rights to the trial judge." Nix, 415 F.2d at 218. In balancing these competing individual and institutional interests the court concludes that, as discussed more fully below, permitting a union to discipline members who file false or malicious charges against other union members or officers is necessary to ensure the democratic integrity and the stability of the union as a whole.

A broad rule prohibiting a union from disciplining a member for even frivolous internal charges that the union member filed against another member, a rule akin to the broad prohibition against discipline for even slanderous speech set forth in Salzhandler, would be antithetical to Congress' goal of ensuring unions remain free from corruption. For example, absent the threat of

discipline, frivolous charges may be wielded as a sword by a corrupt faction of a union seeking to intimidate or harass those opposed to it. False charges, when accompanied with fabricated evidence, may be utilized as a means for a union faction to eliminate its rivals by circumventing the democratic process Congress sought to ensure. "[T]he Act's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." Finnegan, 456 U.S. at 441; see also Aircraft Mechanics Fraternal Ass'n v. Transport Workers Union, Local 514, Air Transp. Div., 98 F.3d 597, 599 (10th Cir. 1996) ("The Supreme Court has on numerous occasions consistently identified the paramount purpose of § 411(a)(2), and the LMRDA generally, to be that of assuring rank-and-file members' democratic participation in intra-union affairs, such as voting in union elections, standing for union office, and approving (or challenging) official union policies and decisions.") (citing cases); Helmer v. Briody, 759 F. Supp. 170, 176 (S.D.N.Y. 1991) ("The free speech provisions of that act are designed to protect speech in the context of the union democratic process, i.e. political speech primarily addressed to other union members, rather than free speech at large.") False or frivolous charges have no legitimate place in the democratic process; such charges simply seek to circumvent and undermine democratic ideals. Yet under the interpretation of the LMRDA urged by the plaintiff, even if a union were to discover the falsehood of these malicious actions, unions would be powerless to root out such corruption because the wrongdoers would be shielded by the LMRDA's free speech guaranty. Surely, Congress did not intend such a result.

However, a narrow rule, permitting a union to discipline a member only if the charges were, in fact, frivolous or false, would require federal courts to invade the internal affairs of unions. Under such a rule, whether or not a union member's LMRDA rights were violated would require the finder of fact to determine anew the veracity of the union member's charges. This court shares the concern expressed by the court in Salzhandler, and numerous other courts, regarding the

propriety of federal courts undertaking a de novo review of facts determined before a union disciplinary body.

> The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act. The conviction of some judges that they are better able to administer a union's affairs than the elected officials is wholly without foundation. Most unions are honestly and efficiently administered and are much more likely to continue to be so if they are free from officious intermeddling by the courts. General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations.

Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964).

Thus, it is the conclusion of this court that the filing of frivolous internal disciplinary charges against a fellow union member is not protected conduct under the LMRDA. On the question of whether or not charges are in fact frivolous, a federal court must defer to the factual findings of a union disciplinary body so as to avoid impermissible entanglement with the internal affairs of a union. However, that is not to say that union's disciplinary authority is unfettered when it comes to disciplining a member based upon charges that he filed against another union member. Perhaps, under certain circumstances, non-frivolous union charges may amount to speech that is protected under the LMRDA. Further, the union may not simply mask its effort to impermissibly punish a union member who happened to file internal union charges by characterizing those charges as frivolous. The union member's rights shall be protected by the LMRDA's guaranty of a full and fair hearing, §101(a)(5), and thus, in that context, a federal court shall be empowered to review a union's finding of frivolity to determine whether it was supported by some evidence.

It is the guarantee of a full and fair hearing that serves to alleviate fear that a union member may have in bringing charges against an allegedly corrupt union official; a concern that the union

official will be subsequently vindicated and then retaliate with charges against the union member, claiming the member's original charges were frivolous and the member should be disciplined.

The safeguard upon the rights of a union member that §101(a)(5)'s requirement of a full and fair hearing represents appears to have been discounted by the court in <u>Salzhandler</u>. Instead, the court placed emphasis upon its belief that union tribunals are inherently partial and thus ineffective arbiters of union disputes, as a factor to support its conclusion that a blanket prohibition against discipline based upon speech (even libelous) was necessary. <u>See</u> <u>Salzhandler</u>, 316 F.2d at 450. But, as will be discussed next, a hearing before a biased tribunal is a violation of a union member's right to a fair hearing under the LMRDA. Thus, the promise of a full and fair hearing during which the union body will have the opportunity to evaluate whether a union member improperly brought frivolous charges against a union official, will adequately ensure that Congress' intent of ensuring that union members are not denied their rights as a result of corrupt union practices. <u>See</u> 29 U.S.C. §401.

Additionally, contrary to the statements of the court in <u>Salzhandler</u>, this court believes that an impartial union tribunal is quite capable of conducting an appropriate review of a complaint, such as the one presented in this case, and undertake the analysis necessary to determine truth versus falsehood or merit versus frivolity. Obviously, a charge is not frivolous or false simply because it was not proven; the court trusts, that upon a full and fair hearing, a union disciplinary body is quite competent to be able to recognize this distinction. The court is confident that appropriately judicious and impartial review is not beyond the abilities of unions.

Accordingly, as for Vought's claim that he was disciplined for exercising his protected rights to speech and assembly, the court finds that the defendants are entitled to summary judgment with respect to this claim. Although Vought alleges that Russell filed charges because Vought exercised his protected rights, (<u>see</u> Docket No. 126 at 14; Vought PFOF 181, Docket No. 128 at 23-

24; PPFOF 196, Docket No. 144 at 27), as discussed above, Russell was not acting as an agent for the union when he filed these charges, nor did the union ratify Russell's allegedly improper action when it sustained the charges brought by Russell. Absent evidence that the union's decision to discipline Vought was, at a minimum, inextricably intertwined with Vought's exercise of a right protected under the LMRDA, see Petramale v. Local No. 17 of Laborers International Union, 736 F.2d 13, 18 (2d Cir. 1984), Vought's claim cannot survive a motion for summary judgment.

In the view of this court, although the LMRDA protects a union member's right to speak, even libelously, with respect to the conduct of a union official, the LMRDA, like the First Amendment, does not protect a union member who chooses to levy false or frivolous union charges against the union official. In such a case, the court's review shall be limited to determining whether the union member received a full and fair hearing and thus, with respect to veracity of the factual allegations, determining whether the charges were supported by some evidence. Therefore, the court shall deny Vought's motion for summary judgment as to Vought's protected rights claim, and grant the defendants' motion for summary judgment with respect to Vought's claim that he was disciplined for exercising his rights under the LMRDA. (See Compl. Count I, Docket No. 1 at 10-11; Compl. Count III, Docket No. 1 at 13-14; Compl. Count V, Docket No. 1 at 16-17.)

## B. Full and Fair Hearing

### 1. Unbiased Tribunal

Now turning to what this court believes is the linchpin to protecting a member's rights under the LMRDA, §101(a)(5) states: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5).

Vought argues that he is entitled to summary judgment on his claim that the defendants violated §101(a)(5)(C) because the tribunal that heard his disciplinary matter was biased against him and the outcome of his hearing was predetermined. Specifically, Vought alleges that the charges brought against him by Russell were related to Vought's alleged attempts to implicate Reardon in Russell's alleged wrongdoing. Nonetheless, Reardon served on the hearing panel reviewing the charges against Vought.

Additionally, Vought submits that Reardon, Skutak, and Kaiser's service on the hearing panel was inappropriate because Vought brought charges against these individuals on July 10, 2003, and on July 18, 2003, Vought brought a second set of charges against Reardon and Skutak. (Docket No. 126 at 7.) Reardon, Skutak, Kaiser, and Kramer all presented testimony to Joint Council 39 rebutting the charges filed by Vought. These charges were dismissed by Joint Council 39 but Vought appealed the dismissal prior to his disciplinary hearing, and thus the charges were still pending at the time of Vought's hearing. Finally, Vought brought a third batch of charges against Reardon, Skutak, Kaiser, and Kramer on September 3, 2003, which were still pending at the time of Vought's hearing. Although Vought requested at his hearing that these individuals recuse themselves from hearing his case, these individuals refused.

With respect to his claim that he was denied a fair hearing because the panel had prejudged his case, Vought relies upon the deposition of Arndt, who served on his disciplinary panel. Arndt testified that he was told before the hearing that the board could consider either a 3 or 5 year expulsion of Vought. (Vought PFOF 217, Docket No. 128 at 28; Def. Resp. Vought PFOF 217, Docket No. 149, at 44-45.) Vought also points to many of the other facts that he relies upon to support his claim of bias to support also his claim that his case was prejudged by the hearing panel.

The defendants respond that Vought is not entitled to summary judgment on this claim because Vought's charges against the members of hearing panel were frivolous attempts to force

their disqualification from hearing his case. Alternatively, the defendants argue that any defect in Vought's hearing was cured because he was entitled to a de novo hearing before Joint Council 39. Finally, the defendants argue that Vought's allegation that members of the hearing panel were potentially biased is insufficient to warrant summary judgment in Vought's favor; rather, Vought must demonstrate actual bias.

"[A]s a matter of fundamental due process, it is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing." Tincher v. Piasecki, 520 F.2d 851, 855 (7th Cir. 1975). However, if a union member brought charges against a committee member simply to disqualify him from serving on the committee, the union member is not entitled to challenge the composition of the committee. Id.

Previously, the defendants moved for summary judgment regarding Vought's claim that he was denied a fair hearing. The court denied this motion on the basis that the defendants could not demonstrate that Vought brought frivolous charges against a majority of the hearing panel in an effort to force their disqualification from hearing his case. The court noted that "the charges Vought made against Reardon, Skutak, Kramer, and Kaiser contain prima facie validity which precludes this court from concluding that Vought filed them in an effort to improperly force disqualification of panel members." (Docket No. 87 at 21.) However, simply because the charges "contain prima facie validity" does not preclude a finding that these charges were, in fact, frivolous and brought for the improper purpose of disqualifying a majority of the Executive Committee. In this case, the question of the purpose of the charges brought by Vought constitutes a dispute of material fact with respect to the charges that Vought brought on September 3, 2003 against Reardon, Skutak, Kaiser, and Kramer that can be resolved only at trial.

However, these were not the only charges Vought filed against members of the hearing panel. Previously, Vought, along with Newell, filed charges against Reardon, Skutak, and Kaiser on July 10, 2003 relating to alleged actions involving Karen and Tim Haase and Vicki Kramer. (Vought PFOF 116-17, Docket No. 128 at 15.) Further, on July 18, 2003, Newell and Vought filed charges against Russell regarding the same alleged conduct for which Newell terminated Russell. (Vought PFOF 129, Docket No. 128 at 17; Dep. Ex. 37.) Newell and Vought also filed charges against Reardon and Russell in response to the charges Reardon and Russell filed against Newell on July 11, 2003. (Vought PFOF 131, Docket No. 128 at 17; Dep. Ex. 37.)

In a decision dated August 14, 2003, Joint Council 39 dismissed these charges. (Dep. Ex. 38.) In an undated letter, Vought and Newell appealed the dismissal of these charges by requesting the IBT to appoint a new panel to hear the charges on the basis that Joint Council 39 was biased. (Vought PFOF 164, Docket No. 128 at 21; Dep. Ex. 40.) In a decision dated May 18, 2004, in which the General Executive Board appears to have conducted a de novo review of the record of the case presented to Joint Council 39, the General Executive Board affirmed the decision of Joint Council 39. (Dep. Ex. 117.)

Thus, although the charges had been dismissed by Joint Council 39, it is clear that charges filed by Vought were pending against Reardon, Skutak, Kaiser, and Russell before the General Executive Board at the time of Vought's hearing before the Executive Committee of Local 662. As the Seventh Circuit made clear in Tincher, "it is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing." 520 F.2d at 855. There is no allegation or evidence to support that Vought, or Newell, Vought's co-accuser, brought the charges Reardon, Kaiser, and Skutak to force their disqualification or for some other improper purpose. Although the General Executive Board eventually affirmed the decision of Joint Council 39, this fact does not mitigate the inherent risk of

prejudice that is present when charges brought by the accused remain pending against a member of hearing panel. See Tincher, 520 F.2d at 855 (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)). Thus, this court concludes, as a matter of law, that Vought was denied a fair hearing before the Executive Committee of Local 662, in violation of §101(a)(5)(C) of the LMRDA.

### 2. De Novo Hearing

The defendants also argue that Vought's claim relating to having been allegedly denied a fair and impartial hearing should be dismissed because Vought's appeal to Joint Council 39 cured any alleged deficiency in the action of the Executive Committee of Local 662. (Docket No. 148 at 27-30.) Vought submits that this argument is inapplicable because the hearing before Joint Council 39 was not a de novo hearing. (Docket No. 126 at 12 n.1.)

Although that the Seventh Circuit has implied that a de novo hearing will cure an improper decision made at the local level, see Frye v. United Steelworkers of Am., 767 F.2d 1216, 1224 (7th Cir. 1985), this court need not directly address the issue of whether a de novo hearing would cure the deficiencies alleged by Vought, because the defendants have failed to demonstrate that a de novo hearing occurred in this case.

The standard of review may have been de novo (although this is not clearly established in the record), but it is clear that the hearing itself was not a de novo hearing. The relevant definition of "de novo hearing" defines the term as, "A new hearing of a matter, conducted as if the original hearing had not taken place." Blacks Law Dictionary 725 (7th Ed. 1999).

In its December 2, 2003 letter to Vought informing Vought of his appeal hearing, Joint Council 39 stated that "[t]he purpose of this hearing will be to consider any evidence in addition to that which was brought forward at the original hearing, held before the Executive Board of Teamsters Local 662." (Third Reardon Aff, Ex. L.) Although Vought was given the opportunity to present additional evidence, it is clear that the Joint Council 39 intended to rest its decision

primarily upon the facts and evidence adduced at the hearing before Local 662's Executive Board. An opportunity to supplement the record is not equivalent to a de novo hearing. It is clear from Joint Council 39's letter that its decision would rest primarily upon the evidence adduced at the hearing before the Executive Committee of Local 662.

The review exercised by Joint Council 39 appears to be analogous to the review routinely exercised by the Seventh Circuit Court of Appeals when reviewing the decisions of the district court. Although a litigant may be able to supplement the record, see Fed. R. App. P. 11(e)(2), the Seventh Circuit does not conduct a "de novo hearing." Appellate review, even if the standard of review is de novo, is not equivalent to a de novo hearing. The significance of this distinction can be recognized in a case, such as this, where credibility of the witnesses appears to have been a significant point of dispute. Even if a reviewing body is given the authority to determine credibility anew, discerning credibility from a transcript is not the same as discerning it from live testimony. Thus, such review is insufficient to cure the defect that occurred in the hearing before the Executive Committee of Local 662. See Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287, 175 F.3d 680, 691 (9th Cir. 1999) ("[O]nly a genuine trial de novo can cure procedural defects that occur at a union disciplinary hearing.") (citing Catlett v. Local 7370, 69 F.3d 254 (8th Cir. 1995)); see also Monaco v. Smith, 2004 U.S. Dist. LEXIS 1334 (S.D.N.Y. 2004).

Perhaps Joint Council 39 would have been willing to conduct a true de novo hearing, but the defendants fail to establish such an intent in this case. If a defendant union intends to rely upon the availability of a de novo hearing as a means to cure any alleged deficiencies in an earlier proceeding, this court considers it incumbent upon the union to clearly communicate to the appealing party that he will be provided a full de novo hearing if he wishes. Because the defendants have failed to demonstrate that they clearly indicated to Vought that a de novo hearing was available, and instead simply stated that Joint Council 39 would consider the record created in the

hearing before Local 662's Executive Board and permit Vought to submit additional evidence, the court finds that the defendants are not entitled to summary judgment on this claim. Because the defendants have demonstrated, at best, that Vought's termination was subject to de novo appellate review by Joint Council 39, any flaw in the decision of the Executive Committee of Local 662 was not cured by Joint Council 39's review.

Therefore, the court shall grant Vought's motion for summary judgment with respect to his claim against defendant Local 662 that he was denied a fair hearing before the Executive Committee of Local 662 regarding his removal from elected union office and from membership in the union, in violation of §101(a)(5)(C) of the LMRDA, (See Compl. Count II, Docket No. 1 at 12, ¶¶77-78).

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Plaintiff Alexander

#### 1. Exhaustion of Internal Union Remedies

The defendants argue that Alexander's claim must be dismissed because he has failed to exhaust his union remedies prior to filing the present lawsuit. (Docket No. 133 at 23-25.) Alexander responds that exhaustion is a requirement imposed at the discretion of the court and it should not be imposed in the present case because exhaustion would have been futile. (Docket No. 141 at 25-26.)

In guaranteeing a union member's right to sue to seek redress for alleged violations of his rights under the LMRDA, §101(a)(4) states:

> (4) Protection of the right to sue. No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof . . . .*

-21-

29 U.S.C. § 411(a)(4) (emphasis added).

> The proviso was designed to further LMRDA's purpose of achieving union democracy by giving unions a reasonable opportunity to correct abuses and by encouraging them to set up machinery for the prompt and fair disposition and review of disputes. The Act therefore authorizes the federal courts to follow the common law practice of requiring a union member to exhaust internal union remedies before bringing suit.

Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012, 1016 (4th Cir. 1965); see also Runyan v. United Brotherhood of Carpenters, 566 F. Supp. 600, 606 (D. Colo. 1983) ("The exhaustion remedy requirement is premised on the purpose of giving the labor organization first opportunity to correct abuses and resolve disputes before resort to outside remedies.") (citing NLRB v. Industrial Union of Marine & Shipbuilding Workers of America, AFL-CIO, Local 22, 391 U.S. 418 (1968); Buzzard v. Local Lodge 1040 International Ass'n of Machinists & Aerospace Workers Union of America, 480 F.2d 35 (9th Cir. 1973)). "The statute, however, does not make the exhaustion of hearing procedures mandatory in all cases, but allows the courts in their discretion to determine whether pursuit of such remedies is required." Simmons, 350 F.2d at 1016 (citing Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78-79 (2d Cir. 1961)); see also Foy v. Norfolk & W. R. Co., 377 F.2d 243, 246 (4th Cir. 1967); Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters, 20 F.3d 720, 731 (7th Cir. 1994) ("Whether to excuse a failure to exhaust before bringing an LMRDA suit is a matter within the court's discretion.").

Alexander argues that exhaustion of union remedies would have been futile because his complaints in this court relate to Reardon and Gegare, "the individuals in charge of the local union and the joint council, respectively," and their "threats, harassment, and intimidation" against Alexander. (Docket No. 164 at 26.)

Even if this court were to assume that Reardon and Gegare were biased against Alexander so as to likely deny Alexander a fair hearing if they participated in hearings regarding Alexander's

effort to obtain redress for his grievances by way of internal union remedies, Alexander has failed to demonstrate that any potential bias could not be cured by Reardon and Gegare's recusal.

Additionally, even if Alexander could demonstrate that both the Executive Committee of Local 662 and Joint Council 39 were biased despite Reardon and Gegare's recusal, the defendants make clear that Alexander had remedies for obtaining a hearing before an unbiased panel by making a request to the IBT's General Executive Board. (Docket No. 156 at 12.) Cf. Nix, 415 F.2d at 216. It is undisputed that Alexander did not avail himself of any of these remedies. Thus, based upon the undisputed facts, Alexander has failed to demonstrate that efforts to exhaust his internal union remedies would have been futile. Therefore, the court finds it inappropriate to excuse Alexander's failure to exhaust his internal union remedies prior to bringing the present suit, and thus §101(a)(4) bars him from pursuing his claims in this court.

**2. Alexander's Resignation as a Bar to his LMRDA Claims**

Alternatively, the defendants argue that Alexander's claims are barred because he voluntarily resigned his union membership and no action was ever taken against his membership in the union. (Docket No. 133 at 25-26.) Alexander responds that although he was not subjected to formal discipline by the union, the "threats, harassment, and intimidation" that he was subjected to "were undertaken to suppress dissent within the union and/or to chill the exercise of union rights," and thus violated his rights under the LMRDA. (Docket No. 164 at 25.) The defendants have not addressed this argument in their reply. Because the court finds that Alexander's claims are barred because of his failure to exhaust his internal union remedies prior to filing the present action, the court finds it unnecessary to consider this alternative argument.

### B. Plaintiff Newell

#### 1. Dismissal of §101(a)(5) Claim as a Bar to §101(a)(1) and (2) Claims

This court previously held that Newell was properly disciplined under §101(a)(5) and thus granted the defendants' motion for summary judgment with respect to this claim. (See Docket No. 87 at 15-21.) The defendants now argue that this holding precludes Newell from pursuing his §101(a)(1) and (2) claims. (Docket No. 133 at 26-28.) Specifically, the defendants argue that "[a]bsent proof that §101(a)(5)'s procedural guarantees were disregarded, Newell's claim that §101(a)(1) and (a)(2) were violated inevitably fails." (Docket No. 133 at 27.) Newell responds that his §101(a)(5) claim is entirely separate from his §101(a)(1) and (2) claims and thus the dismissal of his §101(a)(5) has no effect upon his remaining §101 claims. (Docket No. 164 at 5-9.) In reply, the defendants argue that the cases cited by Newell are distinguishable and Newell's claim must fail because a determination that Newell's §101(a)(1) and (2) rights would necessarily require a review of whether the union's discipline was proper. (Docket No. 156 at 4-6.)

The court finds no merit in the defendants' argument. "The free speech and due process rights guaranteed by the LMRDA are distinct from one another, and it is well established that a union member may bring a suit to redress a violation of § 101(a)(2) free speech rights even if no due process violation is shown." Maddalone v. Local 17, United Bhd. of Carpenters & Joiners, 152 F.3d 178, 183 (2d Cir. 1998) (citing Finnegan, 456 U.S. at 439; Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1468 (6th Cir. 1992)). Regardless of whether a union member received a fair hearing, it is inappropriate for a union to discipline a member for exercising rights protected under the LMRDA. See, e.g., Salzhandler, 316 F.2d 445 (holding that even with a full and fair hearing, union member could not be disciplined for protected speech).

## 2. Conduct Not Protected Under the LMRDA

The defendants argue first that Newell's conduct fell outside the protections of the LMRDA because the conduct that Newell points to as the basis for his claim was undertaken by Newell in his capacity as a union officer and not as a union member.

"It is readily apparent, both from the language of . . . and from the legislative history of Title I, that it was rank-and-file union members -- not union officers or employees, as such -- whom Congress sought to protect" in passing the LMRDA. Finnegan, 456 U.S. at 436-37. However, when a union official holds a dual status as both a union official and as a union member, the LMRDA remains applicable to actions "that affect a union member's rights or status *as a member* of the union." Id. at 437 (emphasis in original). In the present case, not only was Newell's position as a union official affected by the discipline he received but also his rights as a union member. Specifically, Newell was suspended from "membership in Teamsters Local 662 and the IBT for a period of five (5) years." (Third Reardon Aff. Ex. F.) Numerous courts have held that a union member who possesses a dual status as both a union member and a union official does not lose the protection of the LMRDA by virtue of his status as a union official, at least so far as he is subject to discipline that affects his status as a union member. See Snyder, 175 F.3d at 687 fn. 11 ("[U]nion officers, like union members are protected by the LMRDA against discipline that affects their rights as union members.") (citing Grand Lodge of the Int'l Ass'n of Machinists v. King, 335 F.2d 340, 343-44 (9th Cir. 1964); Thompson v. Office & Professional Employees Int'l Union, 74 F.3d 1492, 1503 (6th Cir. 1996) (Union officer "is entitled to protection under the LMRDA because he was disciplined in a manner which affected his right to fully enjoy the rights and privileges of union membership."); Vars v. International Brotherhood of Boilermakers, 204 F. Supp. 241, 243 (D. Conn. 1962) (holding that union official could seek redress under the LMRDA for union action that resulted in his expulsion the union). However, the court need not decide precisely what effect

Newell's status as a union official may have upon his claim under the LMRDA because the court finds that for many of the same reasons Vought's protected rights claim fails, which the court shall not restate here, so too must Newell's.

Newell was charged with intimidating and threatening Russell in an effort to coerce him into lying about the activities of Reardon. Specifically, Russell charged that Newell "deliberately and unethically threatened, intimidated, fabricated evidence, lied and distorted the truth in an attempt to harm members and an elected officer of the Local union." (Reardon Third Aff., Ex. C.) Joint Council 39 sustained these charges and thus disciplined Newell. (Reardon Third Aff., Ex. F.) As the General Executive Board noted in its decision on Newell's appeal, Joint Council 39's decision rested largely upon a credibility determination. (See Reardon Third Aff., Ex. G at 5.)

Like the discipline against Vought, in a broad application of the term "speech," Newell was disciplined for speech, and perhaps arguably for exercising his right to assembly in that Vought was present at some point during the relevant conduct. However, this conduct is not the type of conduct that is protected under the LMRDA. Based upon the union's factual findings, Newell sought to coerce a union employee into lying about the conduct of another union official in an effort to implicate the union official in wrongdoing and thus, arguably, force the union official from office. Newell now attempts to argue that his alleged efforts to coerce a union employee into lying are protected under the LMRDA and therefore not subject to union discipline.

The court finds that Newell's argument is directly contrary to the public policy underlying the LMRDA. It seems entirely inappropriate that what Congress designed as a tool to empower unions to weed out corrupt union officials should be wielded as a shield against the union from disciplining a union official the union finds to be engaging in corrupt behavior. Unions must not be denied the power to root from its ranks those who seek to undermine the democratic principles that Congress sought to ensure were preserved. The check upon this power shall be the LMRDA's

guaranty that each union member shall receive a full and fair hearing prior to being disciplined. A full and fair hearing before an impartial tribunal shall prevent corrupt union officials from falsely claiming the corruption of rival union members in an effort to stifle legitimate opposition.

Given the deference that federal court's must pay to actions and decisions of unions regarding the management of their internal affairs, the factual question of whether a union member engaged in corrupt behavior is one that must be resolved by the union. This court's review shall be limited primarily to the question of whether the member received a full and fair hearing and specifically with respect to the factual findings of the disciplinary body, whether those findings are supported by some evidence. As this court previously noted, Newell received a full and fair hearing and the decision of the Joint Council was supported by some evidence. (Docket No. 87 at 18.) Thus, the court must grant the defendants' motion for summary judgment as to Newell's claims that he was disciplined for exercising rights protected by the LMRDA. (See Compl. Count I, Docket No. 1 at 10-11; Compl. Count III, Docket No. 1 at 13-14.)

Newell also alleged in the complaint that he was denied his right to vote as a consequence of his removal from office and membership in the union. (See Compl. Count V, Docket No. 1 at 16-17.) The parties do not specifically address this count of the complaint in the pleadings currently pending before this court, but the court finds that as a matter of law, under the circumstances presented in this case, this indirect collateral consequence of lawful union discipline is not an independently cognizable claim under the LMRDA. Therefore, the court shall dismiss Count V of the complaint as well.

## VI. CONCLUSION

Based upon the foregoing, only one issue remains for trial, which is the question of damages with respect to Vought's denial of a full and fair hearing. This aspect of Count II applies only to defendant Teamsters General Union Local No. 662, and therefore all other defendants shall be

dismissed from this case. Plaintiffs Newell and Alexander shall also be dismissed from this case as a result of this court granting the defendants' motion for summary judgment as to all of these plaintiffs' claims. This court's November 1, 2007 Scheduling Order, (Docket No. 124), remains in effect.

NOW THEREFORE,

**IT IS ORDERED** that Vought's motion for summary judgment with respect to his claim that he was disciplined for exercising his rights under the LMRDA is **denied**. The defendants' motion for summary judgment with respect to these claims is **granted**. (See Compl. Count I, Docket No. 1 at 10-11; Compl. Count V, Docket No. 1 at 16-17.)

**IT IS FURTHER ORDERED** that Vought's motion for summary judgment with respect to his claim against defendant Local 662 that he was denied a full and fair hearing before the Executive Committee of Local 662, regarding his removal from elected union office and from membership in the union, in violation of §101(a)(5)(C) of the LMRDA, (See Compl. Count II, Docket No. 1 at 12, ¶¶77-78), is **granted**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment, (Docket No. 132), with respect to Alexander's claims, (Compl. Count I, Docket No. 1 at 10-11; Compl. Count III, Docket No. 1 at 13-14; Compl. Count V, Docket No. 1 at 16-17), is **granted**. Alexander is hereby dismissed as a plaintiff in this action.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment, (Docket No. 132), with respect to Newell's claims, (Compl. Count I, Docket No. 1 at 10-11; Compl. Count III, Docket No. 1 at 13-14; Compl. Count V, Docket No. 1 at 16-17), is **granted**. Newell is hereby dismissed as a plaintiff in this action.

**IT IS FURTHER ORDERED** that John Kaiser, Vicki Kramer, David Reardon, Robert Russell, Rick Skutak, and State of Wisconsin Teamsters Joint Council No. 39 are hereby dismissed as defendants in this action.

Dated at Milwaukee, Wisconsin this <u>21st</u> day of February 2008.

<u>s/AARON E. GOODSTEIN</u>
U.S. Magistrate Judge