# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DANIEL VOUGHT,

        **Plaintiff,**

    **v.**                          **Case No. 05-C-552**

TEAMSTERS GENERAL UNION LOCAL NO. 662,

        **Defendant.**

---

## ORDER REGARDING ATTORNEYS' FEES AND COSTS

This case has a long and somewhat complicated procedural history, which shall be recounted in more detail, as necessary, below. At this point, it is sufficient to note that this case began with three plaintiffs alleging a total of six distinct causes of action against eighteen defendants. As the result of numerous decisions by this court, all but a single cause of action, Daniel Vought's ("Vought") claim that he was denied a fair hearing before an impartial union tribunal, against a single defendant, Teamsters General Union Local No. 662 ("the Union"), were dismissed. The court determined that the Union violated Vought's right to an impartial tribunal when a person against whom Vought had internal union charges pending served on the panel hearing Vought's case. Thus, the only issue for trial was the amount of damages that Vought suffered as a result of the Union's action. On the eve of trial, after the court rejected the plaintiff's numerous efforts to expand the scope of the trial, the parties entered into a stipulation whereby Vought received $9,124.00 for the months remaining on his elected term that he was denied his officer stipend, thereby negating the need for a trial. (Docket No. 204.) Judgment was entered accordingly. (Docket No. 209.)

Currently pending before this court is Vought's motion for attorneys' fees (Docket No. 210.) The Union has responded to this motion, (Docket No. 243), and Vought has replied, (Docket No. 253).

Vought has also filed a bill of costs. (Docket No. 218.) The Union has objected to Vought's bill of costs, (Docket No. 229), Vought has filed a memorandum in support of his bill of costs, (Docket No. 239), and the defendants have replied, (Docket No. 249).

The Union and the other dismissed defendants have each also filed bills of costs. (Docket Nos. 221 (Teamsters General Union Local No. 662), 222 (Supplement filed by Teamsters General Union Local No. 662), 224 (Paul Lovinus, Michael Spencer, Reggie Konop, Tony Cornelius, Sebastian Busalacchi, Gerald Jacobs, Wayne Schultz, Tim Wentz, James Dawson, Randy Arndt, Fred Gegare), 226 (David Reardon, Rick Skutak, John Kaiser, Vicki Kramer, Robert Russell, State of Wisconsin Teamsters Joint Council No. 39).) The plaintiffs objected to these bills of costs. (Docket No. 237.) The defendant filed a joint memorandum in support of their bills of costs. (Docket No. 247.) All plaintiffs have replied. (Docket No. 251.)

The pleadings in this matter are closed and ready for resolution.

**ATTORNEYS' FEES**

Vought seeks $195,381.75 in attorneys' fees and $2,115.70 in non-taxable costs. This represents a fraction of the roughly $320,000.00 in attorneys' fees and $28,000.00 in costs incurred in prosecuting the cases of all three original plaintiffs.

The Union responds that Vought is not entitled to recover any attorneys' fees because he lost on nearly every claim and, regarding the one claim on which he prevailed, he provided no common benefit to the other members of the union. The Union argues that, at most, Vought is entitled to nominal attorneys' fees and costs.

Attorneys' fees are not specifically authorized under Title I of the LMRDA. However, the Supreme Court has held that under certain circumstances attorneys'

fees may be awarded. Hall v. Cole, 412 U.S. 1, 4-5 (1973). The Court in Hall stated that a trial court may award attorneys' fees at its discretion when, 1) defendants have acted in bad faith, or 2) the case conferred substantial benefit to the union and its members. Id. at 5 at 5.

The Court in Hall explains that, in the bad faith category, attorneys' fees may be awarded "to a successful party when his opponent has acted in 'bad faith, vexatiously, wantonly or for oppressive reasons.'" Id. (Quoting 6 J. Moore, Federal Practice 54.77(2), p. 1709 (2d ed. 1972)). Furthermore, when punitive damages are awarded on the basis of the defendant's willful or reckless disregard of the plaintiff's interests, a court may find it necessary to award attorneys' fees as further punitive deterrence for the actions of the defendants. Kinslow v. American Postal Workers Union, Chicago Local, 222 F.3d 269, 278-80 (7th Cir. 2000). . . .

Under the common benefit doctrine, the plaintiff is entitled to attorneys' fees if it is believed his litigation has protected other union members by deterring possible future conduct that would be similarly unjust and oppressive.

Shales v. General Chauffeurs, Salesdrivers & Helpers Local Union No. 330, 2003 U.S. Dist. LEXIS 15011, 10-11 (N.D. Ill. 2003). "The overriding considerations in evaluation of 'common benefit' claims are: whether the benefits may be traced with some accuracy; whether the class of beneficiaries is readily identifiable; and whether there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefiting." Brennan v. United Steelworkers of America, 554 F.2d 586, 604-05 (3d Cir. 1977).

The plaintiffs do not allege that attorneys' fees are recoverable under the bad faith theory, and thus the court shall focus upon the question of whether Vought conferred a common benefit on the union membership so as to justify an award of attorneys' fees. Vought alleges that his suit has conferred a common benefit upon all members of the union because "this Court has now set forth a road map for how Local 662 (or any union for that matter) must conduct itself going forward . . . [and Vought] has provided future safeguards for other union members facing disciplinary action." (Docket No. 253 at 4.) The Union argues that there was no systemic problem that is now corrected by Vought's litigation, but rather the violation in the present case was the result of a simple mistake. (Docket No. 243 at 12-13.) Further, the Union argues that Vought's victory was entirely personal in

that he recovered only the officer stipend he lost as a result of the Union's illegal action and did not seek nor obtain, for example, injunctive relief. (Docket No. 243 at 13-14.)

It is the conclusion of the court that Vought's successful litigation of his claim resulted in a benefit to all members of Local 662. It is clear from the record that the prejudice that is inherent in having a union member's disciplinary fate determined by a panel that includes a person against whom the accused has disciplinary charges pending was scarcely considered by the Union. In light of this court's clear holding that such conduct is not permissible under the LMRDA and the damages paid by the Union, the court suspects that potential bias of members of a disciplinary body shall be a foremost concern in subsequent Union proceedings. In this regard, Vought's successful litigation has resulted in a benefit to all Union members; hopefully, it will serve as a deterrent on improperly constituted future panels.

However, Vought's success was a small fraction of what was predominantly an unsuccessful litigation for the plaintiffs. This case was time-consuming; it is now more than three years since it was filed. This case was complex; there have been more than 250 separate documents filed, including a motion to dismiss, (Docket No. 31), a motion for sanctions, (Docket No. 32), three separate motions for summary judgment, (Docket Nos. 47, 125, 132), and various motions for reconsideration or to otherwise revive arguments previously rejected by the court, (see, e.g., Docket Nos. 90, 103, 178). Further, discovery involved numerous depositions, so many so that the plaintiffs sought leave to conduct depositions in excess of the ten permitted under Federal Rule of Civil Procedure 30. (Docket No. 117.) However, neither the duration, nor the complexity were attributable to Vought's successful claim; the law and the facts related to the claim on which Vought prevailed were simple and straightforward. It was the plaintiffs' unsuccessful pursuit of their numerous other claims that resulted in the vast majority of attorneys' fees and costs in this

case. Therefore, the court turns the question of determining the proper fee to be awarded for Vought's minimally successful action.

"Fee calculation is an imprecise science." Evans v. Evanston, 941 F.2d 473, 476 (7th Cir. 1991). "'There is no precise rule or formula for making these determinations,' and a district court 'necessarily has discretion' in choosing among the various alternative methods." Id. at 477 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983). The "centerpiece of fee awards" is the lodestar figure, that is, the number of reasonably expended hours multiplied by an appropriate fee. Id. at 478 (quoting Blanchard v. Bergeron, 489 U.S. 87, 94 (1989)).

Vought states that the prosecution of the claims of all three plaintiffs required 1,241.19 hours of attorney time and an additional 300.20 hours of legal assistant time. Vought does not specifically state in his brief or his reply the precise number of hours that he contends were specifically related to his single successful claim. Perhaps, despite such omission, the number of hours may be calculated by a bit of arithmetic.

In an effort to ascertain the number of hours appropriately expended, the court must determine the number of hours a reasonable attorney would expend in successfully prosecuting this case if Vought's single successful claim was the only claim initiated and prosecuted. An alternative method for calculating the lodestar figure would be to analyze this case as a whole, determine which fees were reasonably incurred in prosecuting the case as a whole, multiply that number by a reasonable fee, and then increase or decrease this figure after considering factors such as the time and labor required, skill needed, amount involved and results obtained, time limitations imposed by the case, experience, and reputation and ability of the lawyers. Strange v. Monogram Credit Card Bank, 129 F.3d 943, 946 (7th Cir. 1997) (citing Estate of Borst v. O'Brien, 979 F.2d 511, 514 (7th Cir. 1992)). In light of the fact that this case was particularly complex with numerous unsuccessful plaintiffs and claims, a more efficient approach, one that nonetheless arrives at the same result that

5

could be expected utilizing the traditional lodestar calculation method, is to concentrate solely on the prevailing claim. Factors such as time, labor, skill, experience, and reputation, are accounted for in the calculation of the reasonable hourly rate. The results obtained factor is considered in the court's calculation of the hours that could be reasonably expected to be expended in prosecuting Vought's successful claim.

For the sake of clarity, the court shall break this case down into four distinct stages. First, there is the initial investigation and filing stage. Second, there is discovery. Third, there are dispositive motions. Fourth, there is the trial preparation and settlement stage.

As part of the initial investigation and filing stage, a reasonable attorney would be required to meet with his client, discuss the viability of his case, and discuss routine matters such as a fee arrangement. Because a claim under the LMRDA is not the sort of claim that an ordinary attorney would be expected to be familiar with, the attorney would be required to undertake some research to determine if the facts presented by his prospective client present a viable claim. Following this research, it would likely be necessary to again briefly consult with the client and formalize a representation agreement. The attorney would then begin drafting the complaint, a process that may require some degree of additional research. For this initial effort, Attorney John DeRose spent 22.5 hours. Because clearly much of this initial time involved consultation with the other two plaintiffs and related to the many other claims that were unsuccessful, the court finds that **10 hours** is a reasonable amount of time for this initial stage. The balance of Attorney DeRose's charges and all of the charges billed by the law firm of Cooke & Franke relate to the attorneys' efforts to withdraw from the case, find successor counsel, and respond to the defendants' motion for sanctions. Such expenses are not reasonable attorneys' fees to consider in calculating the lodestar.

As for the discovery phase, only a small portion of the discovery undertaken in the present case would be necessary to successfully prosecute Vought's claim. Certain routine discovery

matters are unavoidable. For example there are the Rule 26(a) disclosures and the Rule 26(f) conference. However, successful prosecution would require minimal substantive discovery such as, perhaps, a few interrogatories or requests for admission. A maximum of 20 hours of attorney time is reasonably incurred undertaking this ordinary and required discovery. Depositions would likely be unnecessary, but the court recognizes that many attorneys appear to regard depositions as routine, even in a fairly simple dispute such as this. Assuming that depositions were reasonable at all in this case, at most it was reasonable for the parties to depose only the principles, i.e. Vought, Reardon, Skutak, Kaiser, and Russell. On average, according to the attorney records submitted, each deposition required roughly eight hours of attorney time at the deposition and roughly five hours of preparation time. In light of the fact these depositions certainly covered far more than merely Vought's claim, it is inappropriate to consider these full amounts recoverable in light of Vought's limited success. Further, the billing records for Vought's attorneys indicate that they frequently had two attorneys simultaneously preparing for and attending depositions. Such redundancy is unnecessary in a fairly factually simple case such as this. Therefore, the court finds that on average a total of 10 hours of attorney time is appropriate for each of the five depositions, which includes preparation, the deposition itself, and reviewing the deposition. Thus, the discovery phase of this matter could be reasonably expected to consume no more than **70 hours**.

Next is the dispositive motion phase. In the present case, there was a motion to dismiss filed by the defendants, (Docket No. 31), which was essentially supplemented by a motion for partial summary judgment, (Docket No. 47). Although the defendants did move for summary judgment on the claim upon which Vought was successful, the bases for these motions were primarily directed at alleged defects in the complaint and the ultimately unsuccessful claims. If Vought had limited his complaint to only the claim on which he prevailed, the court finds it unlikely that the defendant

would have brought a motion to dismiss or a motion for partial summary judgment. Therefore, the court shall not consider these hours in the calculation of the lodestar.

Both parties moved for summary judgment. Due to the nature of Vought's claim, he certainly would have filed a motion for summary judgment. Even if the defendant also filed its motion for summary judgment, these hypothetical motions would be far less complex and time consuming than the motions that were actually filed in the present case. For example, the facts were straightforward and would not require the review of substantial discovery or complex proposed findings of fact. Additionally, the primary law was not complex; the court's decision rested almost entirely upon a single case from the Seventh Circuit that directly addressed the issues raised by Vought. However, the court acknowledges that Vought's attorney would likely have to conduct some degree of research to counter the defendants' claim that any defect in Vought's initial hearing was cured by a de novo hearing before Joint Council 39, and whether Vought had standing to bring his claim in light of his resignation from the Union.

In total, Vought's attorneys expended roughly 220 hours in drafting the initial motion for summary judgment and the supplementary brief, the response to the defendants' motion, and Vought's reply. Only a small fraction of this time could be reasonably expected to relate to Vought's successful claim. Less than half of Vought's 27-page brief in support of his motion for summary judgment was related to his claim that he was denied a full and fair hearing because the matter was heard by a biased tribunal. Less than 20% of the plaintiffs' 31-page response relates to Vought's successful claim. Again, roughly half of Vought's 13-page reply brief directly relates to his successful claim. Therefore, in total, roughly one-third of the content of Vought's briefs was related to his successful claim. Although this method of counting pages could not be expected to act as a proxy for time expended in every case, given the facts of this case where no claim is particularly fact intensive or legally complex in comparison to the others, the court finds that this

Case 2:05-cv-00552-AEG   Filed 08/22/08   Page 8 of 22   Document 257

method provides a fair approximation to serve as starting point in determining the number of hours that could be reasonably expected to be incurred in during the summary judgment stage for Vought's single successful claim. One third of the 220 hours is approximately 73 hours. Although this figure is on the high side of what the court considers appropriate, because, for example, Vought included numerous theories of recovery that the court rejected, the court nonetheless finds the figure reasonable, and therefore the court shall include **73 hours** for the summary judgment stage in its lodestar calculation.

Finally, there is the trial preparation and settlement stage. Vought's attorneys expended numerous hours unsuccessfully attempting to expand the issues or the scope of damages for trial. The court finds that these expenditures of time are not compensable. Rather, in light of the pleadings in this case, the damages that Vought was likely to recover from a jury as a result of the violation the court found were not subject to much dispute. It was made clear to this court that the defendant was willing to pay to Vought the full officer stipend that he was denied as a result of being inappropriately suspended from the Union; thus, it was Vought's unsuccessful efforts to expand his claim that led to the further costs in this case. See Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees.")

Were it not for Vought's unsuccessful efforts to expand the scope of the trial, this case should have settled soon after the court issued its summary judgment decision in favor of Vought. This would have negated the need for essentially any time-consuming trial preparation, such as the preparation of pretrial reports or attendance at the pretrial conference. However, some investigation into the scope of Vought's damages would be prudent and thus expected. Further, settlement requires consultation with opposing counsel and with the client. Finally, there is the formalization of the agreement. For all of these efforts, the court could expect a reasonable attorney to expend no

more than 25 hours. Additionally, included in this final stage is the preparation of a motion for attorneys' fees and costs.

Vought's attorneys allege they expended 24.2 hours of time in addition to 19.7 hours of legal assistant time on the motion for attorneys' fees matter. Here again, the petition sought compensation for time devoted to unsuccessful claims. If limited to the sole successful claim, the court finds that a maximum of 10 hours is a reasonable amount to time to expect to be expended on a motion for attorneys' fees.

As with all other aspects of the court's reasonable hour calculations, the court shall not differentiate between attorney and legal assistant time. The court has considered the fact that a certain portion of hours may be completed by a legal assistant at less cost than attorney and has adjusted its reasonable hour calculations accordingly. Therefore, the court finds a total of **35 hours** to be an appropriate figure for the trial preparation and settlement stage of this case, and thus the total number of hours of attorney time reasonably expected to be expended in the successful prosecution of Vought's single successful claim is **188 hours**.

Having determined the reasonable number of hours expended, the court shall turn to the second aspect in calculating the lodestar figure, that being the appropriate hourly rate. Although John DeRose's rate was $500.00 per hour, in light of the comparatively minimal amount of work that Attorney DeRose performed in this case, the court finds this figure inappropriate to serve as the basis for calculating the lodestar. Rather, the court shall utilize the $225.00 per hour rate charged by Vought's subsequent attorneys. The record, as well as this court's own experience, supports the conclusion that $225.00 per hour is a reasonable rate for an attorney undertaking a case involving a less-common and, as is made clear by the billing records of the law firm of Cooke & Franke, unpopular area of labor law. Therefore, multiplying the hours that could be reasonably expected to

be expended litigating this matter (188 hours) by the reasonable hourly rate ($225.00) produces a reasonable attorney fee award of **$42,300.00**.

Although this figure is nearly five times the amount of damages recovered by Vought, the court nonetheless finds this attorneys' fee figure appropriate. As the court discussed above regarding the common benefit provided by Vought's case, there was more to this case than simply the recovery of damages. Although Vought did not seek injunctive or other equitable relief, Vought's victory was a vindication of the right of union members to a hearing before an unbiased panel before being disciplined by a union. However, Vought prevailed on only a small fraction of the claims initially raised in the complaint and many of the additional attorneys' fees incurred were the result of Vought unnecessarily delaying and compounding the proceedings in this matter. For this reason, the court finds that the significant reduction in attorneys' fees claimed is appropriate, and the court shall deny Vought's request for other non-taxable costs.

**BILLS OF COSTS**

Pursuant to Federal Rule of Civil Procedure 54(d)(1), "[p]revailing parties recover costs as of course." Nisenbaum v. Milwaukee County, 333 F.3d 804, 811 (7th Cir. 2003). However, the precise amount of fees is a question of discretion for the district court. SCA Services, Inc. v. Lucky Stores, 599 F.2d 178, 180 (7th Cir. 1979). Even though a party does not prevail on every claim, when a party gets substantial relief it is properly considered a prevailing party. Slane v. Mariah Boats, Inc., 164 F.3d 1065, 1067 (7th Cir. 1999). When a plaintiff has succeeded on only some of his claims, the district court must pay particular attention to the extent of the plaintiff's success to determine the appropriate award. First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir. 1985).

**Vought's Bill of Costs**

Vought seeks $13,613.70 in costs, including $106.73 in fees for service, $9,784.15 in deposition costs, $2,566.00 in copying costs, and $1,156.82 in postage against the Union (Docket No. 218.) In the first line of his Bill of Costs, Vought incorrectly identified the party he seeks costs against as "Joint Council 39." As an initial matter the Union argues that this drafting error should be a basis for denying Vought any costs because it is only General Teamsters Union Local 662 that Vought prevailed against. The court rejects the defendant's argument that this drafting error should warrant the denial of costs in favor of Vought.

Turning to the merits of the Union's objection to Vought's Bill of Costs, the Union argues that if Vought is entitled to any costs, it is substantially less than the amount requested because Vought is seeking to recover costs incurred in the prosecution of his unsuccessful claims or costs incurred in the other plaintiffs' unsuccessful claims. Further, the Union argues that postage costs are not recoverable, Vought failed to demonstrate that the costs incurred were necessary to the litigation, and the fees for service were not incurred.

Vought responds that all depositions were necessary to the successful prosecution of his claim and therefore should be awarded the full amount requested. As for copying and postage expenses, "Vought concedes the defendant is entitled to some reduction in the copying expenses due to the fact that the copies sought would also relate to Jim Newell and Dan Alexander's claim." (Docket No. 239 at 3.) However, Vought has not offered any suggestion as to what sort of reduction is appropriate. As for fees requested for the service of a subpoena for the trial that never occurred, Vought argues that service was nonetheless necessary in preparation of trial.

Prevailing parties ordinarily may recover costs incurred related to depositions that were necessary to the successful prosecution of claims. Corder v. Lucent Techs., 162 F.3d 924, 928-29 (7th Cir. 1998). Whether or not a deposition was necessary for the successful prosecution of claim

is determined by looking to the facts known that the time of the deposition and not how the deposition factored into the resolution of the case. Mother & Father v. Cassidy, 338 F.3d 704, 712 (7th Cir. 2003).

In light of Vought's limited success in this case, the court finds it unreasonable for Vought to recover all of his deposition costs. Certainly, all of the depositions that occurred in this case related to some degree to Vought's and the other plaintiffs' unsuccessful claims. As discussed above, the court finds that at most a total of five depositions were necessary to Vought's claim. However, as discussed above, these depositions certainly should have been far shorter if limited to only Vought's successful claim. Thus, the court finds that in addition to limiting Vought's costs to the five depositions of the principle parties discussed above, further reduction in the deposition costs incurred by Vought is appropriate. In light of Vought's very limited success in this matter, the court finds that his cost recovery should be similarly limited. Therefore, the court shall award him one-third of the costs incurred for the five depositions the court concluded above were necessary to the successful prosecution of his claim. ($2,641.25 for depositions of Russell and Reardon + $1,108.75 for deposition of Kaiser + $783.75 for deposition of Skutak + $334.30 for deposition of Vought = $4,868.05 x ⅓ = **$1,622.68**).

As for Vought's request for copying expenses, the court is unable to discern from the documents presented which, if any, copying costs were necessary to Vought's prosecution of his single successful claim. Counsel for Vought does not allege that he ever provided his client with copies of any filings; counsel alleges only that "for the most part, plaintiffs [sic] counsel would send copies of pertinent documents only to Jim Newell, who would then allow the other plaintiffs to review the document, or, he would provide additional copies to them." (Docket No. 239 at 3.) Jim Newell is not a prevailing party, and therefore any costs incurred by providing him with copies of pleadings are not recoverable by Vought. In light of the fact that nearly all documents were filed

13

electronically, the only photocopying costs that might be recoverable are costs related to copying the courtesy copies of all pleadings required by the court and any documents filed in paper format only. Based upon the billing records submitted by Vought, the court is unable to discern which, if any, of the photocopying charges relate to these copying costs. Additionally, certainly the majority of any expenses incurred relating to providing the court with courtesy copies of the pleadings would relate to the unsuccessful claims brought by Vought and the other plaintiffs. In light of Vought's very limited success and his failure to demonstrate what costs were related to the prosecution of his single successful claim, the court shall deny Vought any photocopying costs.

As for Vought's request for "[p]ostage, fax, Fed-Ex & UPS charges," the court shall deny Vought's request. In the Seventh Circuit, it is well-established that fees for postage and similar expenses are generally not taxable costs. Wahl v. Carrier Mfg. Co., 511 F.2d 209, 217 (7th Cir. 1975).

Finally, there is the matter of the $106.73 charge for the unsuccessful efforts to serve a trial subpoena upon John Kaiser. The process server made multiple efforts to serve Kaiser, and thus incurred an expense for Vought, but had yet to be successful at the time this matter settled. The Union objects on the basis that this expense was never incurred because the trial never took place and alternatively, Kaiser's appearance could have been secured at trial without the service of a subpoena because he was represented by counsel. Although the trial never took place, Vought nonetheless incurred this expense in preparation for trial. Second, although Kaiser was represented by counsel and counsel may well have assured his appearance at trial if requested, as this court instructed all parties at the final pretrial conference, each party is responsible for securing its own witnesses for trial, regardless of the opposing party's representations. Thus, a subpoenaing an adverse witness would have been prudent.

14

However, the court cannot say that the appearance of Kaiser at trial would have been necessary to his claim. Although it was Kaiser's failure to recuse himself that was one of the reasons Vought prevailed upon his claim, this was not an issue that was going to be presented to the jury. The sole issue for trial was Vought's damages, and Vought has failed to demonstrate that Kaiser possessed any information relevant to the question of damages. Thus, Vought has failed to demonstrate that this cost was necessary to the successful prosecution of his claim, and therefore this cost shall be denied.

In total, the court shall order the Union to pay Vought **$1,622.68** in taxable costs.

**Defendants' Bills of Costs**

The defendants in this matter have filed various separate bills of particulars distinguished by the time that each defendant was dismissed from this case. Teamsters Local No. 662 filed a bill of costs seeking $727.66 for depositions from plaintiffs Newell and Alexander. (Docket Nos. 221; 222.) Defendants Paul Lovinus, Michael Spencer, Reggie Konop, Tony Cornelius, Sebastian Busalacchi, Gerald Jacobs, Wayne Schultz, Tim Wentz, James Dawson, Randy Arndt, and Fred Gegare filed a bill of costs seeking $1,752.60 in copying costs from all plaintiffs. (Docket No. 224.) Defendants David Reardon, Rick Skutak, John Kaiser, Vicki Kramer, Robert Russell, and State of Wisconsin Teamsters Joint Council No. 39 submitted a bill of costs seeking $6,548.91 in deposition costs and $2,377.00 in copying costs from all plaintiffs. (Docket No. 226.)

As a preliminary matter, the plaintiffs object to assessing costs against them on the basis that requiring the unsuccessful plaintiffs to pay such costs would have a chilling effect upon prospective LMRDA plaintiffs and would thus dissuade union members from bringing suit under the LMRDA to assert their rights.

The court disagrees with the plaintiffs. Expecting that an unsuccessful union member be held to the same standard as nearly every other civil litigant and be accountable for the

15

consequences of an unsuccessful lawsuit should not dissuade any union member from attempting to defend rights he firmly believes were violated by a union. Cf. Commer v. McEntee, 2007 U.S. Dist. LEXIS 59298, 4 (S.D.N.Y. 2007). The LMRDA contains no provision exempting plaintiff union members from paying the taxable costs of the union when the plaintiffs lose in their suit. The absence of such a provision, particularly in light of the fact that assessing the prevailing party's costs against a losing party is an ordinary and expected aspect of litigation, strongly indicates that Congress did not consider prohibiting the assessment of costs against plaintiff union members to be necessary to ensure the overall mission of the LMRDA. Finally, the LMRDA is a statute with a long history, but nonetheless, the plaintiffs have failed to cite to any case where a court has held that the public policy interests underlying the LMRDA prohibit the taxing of costs against unsuccessful union member plaintiffs. To the contrary, the defendants have provided the court with cases where courts have assessed costs against unsuccessful union plaintiffs. See, e.g., Rashid v. Communications Workers of Am., 2007 U.S. Dist. LEXIS 6628 (S.D. Ohio 2007); Local Union #575 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus., 995 F. Supp. 1151, 1164 (D. Colo. 1998).

Second, the plaintiffs argue that the defendants' request for costs should be denied because the plaintiffs lack the ability to pay such costs.

The plaintiffs have failed to demonstrate indigence. Both Vought and Alexander are gainfully employed and although the plaintiffs imply that they are earning less than they had at the Union, they provide no information as to their overall financial resources. As for Newell, he states he is continuing with WIRE and this venture has yet to earn any income in 2008, but he also provides no information as to his overall financial condition. As the Seventh Circuit stated, "A drop

16

in income, without more, is no indication of indigence, because it tells [the court] nothing of [the plaintiffs'] other financial resources." Corder v. Lucent Techs., 162 F.3d 924, 929 (7th Cir. 1998).

Finally, there is the question of whether any costs should be assessed against Vought. As discussed above, Vought was a prevailing party. However, he prevailed only with respect to a single claim against the Union; on all other claims against all other defendants, Vought was unsuccessful. Because there were distinct claims and distinct defendants, the court finds that it is possible to appropriately apportion to Vought the costs the prevailing defendants incurred in defending his unsuccessful claims. Therefore, it is the conclusion of the court that Vought's limited victory does not act as a total bar to Vought's liability for costs to the prevailing defendants.

The defendants seek two varieties of costs—depositions and copying. The plaintiffs argue that certain depositions were not necessary to the defendants' successful defense of the case and that the copying costs alleged are excessive. Beginning first with deposition costs, the defendants seek to recover all of their deposition costs. The court finds this unreasonable. As noted above, certain deposition costs were related to the prosecution of Vought's successful claim. Although Vought was successful against only a single defendant, the court nonetheless finds it inequitable to require Vought to pay to any prevailing defendant any portion of the deposition costs that the court has found to be related to his successful claim.

The plaintiffs also object to the $60.00 charge incurred for a DVD copy of certain videotaped depositions. The plaintiffs argue that these DVD copies were not necessary to the defendants' case because a traditional paper transcript had been prepared.

The defendants argue that "the case law cited by the Plaintiffs has been superseded by Fed. R. Civ. P. 30(b)(2), and been overruled in this circuit," (Docket No. 247 at 9 (citing Roberts v. Owens-Corning Fiberglass Corp., 101 F. Supp. 2d 1076, 1086 (S.D. Ind. 1999)). The defendants fail to acknowledge that Rule 30(b)(2) has been subsequently amended and is now Rule 30(b)(3)(A).

17

The defendants also cite Commercial Credit Equipment Corp. v. Stamps, 920 F.2d 1361, 1367 (7th Cir. Ill. 1990), a case that does not support the defendants' position but has subsequently been overruled in relevant part as a consequence of a separate prior amendment of the Federal Rules of Civil Procedure. See Little v. Mitsubishi Motors N. Am., Inc., 514 F.3d 699, 701-02 (7th Cir. 2008) (per curiam). Recently, in Little, the Seventh Circuit held that costs incurred in transcribing a videotaped deposition are taxable because under a prior version of Rule 32, "a party must provide a transcript of any deposition testimony the party offers" at a hearing or trial. Id. at 702.

The present case presents the inverse question; is the cost of a DVD of a deposition recoverable when a traditional stenographic transcript has been prepared? Because the video recording was in addition to the traditional stenographic transcription, which the court presumes, based upon the nature of the parties arguments was the method of recording originally noticed in accordance with Rule 30(b)(3)(A), the answer to the question presented is found in Rule 30(b)(3)(B). This Rule governs the recording of depositions by means in addition to that stated in the notice of the deposition, and states:

> With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice. That party bears the expense of the additional record or transcript unless the court orders otherwise.

It was the defendant's choice to opt for the redundancy of stenographic and video recording and Rule 30(b)(3)(B) makes clear that the defendant must bear the additional cost. Even if the court were to accept the position that Rule 30(b)(3)(B) permits the court to exercise its discretion and order the payment of the additional cost by the non-prevailing party as a taxable cost, rather than assessing the cost of the alternative recording to the non-requesting party only when leave is sought in advance of the deposition, the court finds no reason to award the cost in this case. The court fails to find that the video taped deposition was necessary to the defendants' case and therefore is not a taxable cost.

Therefore, the court shall require the plaintiffs to pay all of the deposition costs requested by the prevailing defendants except for ⅓ of the costs incurred in the deposition of Robert Russell, David Reardon, John Kaiser, Rick Skutak, and Daniel Vought. For these depositions plaintiffs Alexander and Newell shall be responsible, jointly and severally, for **$1,939.37** (Russell and Reardon deposition costs, $1,035.25 + Kaiser deposition costs, $410.75 + Skutak deposition costs, $300.75 + Vought deposition costs, $1,222.31 - $60.00 DVD cost = $2,909.06 x ⅔ = $1,939.37). As for all other deposition costs, all plaintiffs shall be responsible, jointly and severally, for **$4,551.35**. (Kramer deposition costs, $213.25 + Kloss deposition costs, $238.50 + Wentz and Dawson deposition costs, $379.75, + Newell deposition costs, $1,255.36 - $80.00 DVD cost, + Alexander deposition costs, $716.60 - $40.00 DVD cost, + Graff, K. Haase, and T. Haase deposition costs, $857.00 + Lovins deposition costs, $553.00 + Arndt deposition costs, $153.69, Cornelius deposition costs, $304.20 = $4,551.35.)

Second, there is the question of to whom the plaintiffs shall be liable. Local 662 seeks one-seventh of the total costs and defendants State of Wisconsin Teamsters Joint Council 39, Vicki Kramer, David Reardon, Robert Russell, John Kaiser, and Rick Skutak, seek the remaining six-sevenths. The court shall accept the defendants' requested division.

Therefore, plaintiffs Newell and Alexander shall be responsible jointly and severally for **$277.05** ($1,939.37 x (1/7)) and plaintiffs Newell, Vought, and Alexander shall be responsible jointly and severally for **$650.19** ($4,551.35 x (1/7)) in deposition costs to defendant Local 662. Additionally, plaintiffs Newell and Alexander shall be responsible jointly and severally for **$1,662.32** ($1,939.37 x (6/7)), and plaintiffs Newell, Vought, and Alexander shall be responsible jointly and severally for **$3,901.16** ($4,551.35 x (6/7)), in deposition costs to defendants State of Wisconsin Teamsters Joint Council 39, Vicki Kramer, David Reardon, Robert Russell, John Kaiser, and Rick Skutak.

Finally, there is the question of copying costs. The plaintiffs argue that the copying costs sought in Docket No. 224 are largely duplicative of the charges sought in Docket No. 226-2. Further, the plaintiffs argue that the rate charged is excessive.

It appears that the plaintiffs' objections are based simply upon a misunderstanding of the defendants' requests. It does appear at first blush that the defendants seeking costs well in excess of $2 per page. For example, in Docket No. 224, the defendants seek $46.20 for documents identified as consisting of 21 pages. However, the footnote states, "Costs are calculated on the basis of $0.20 per page for each copy. All copies are calculated for one copy per filing defendant in this bill of cost (11 defendants). Where all defendants did not receive copies of filings is noted." Therefore, the defendants are seeking only $0.20 per page, the lower of the figures that the plaintiffs concede are reasonable.

Second, it initially appears that Docket No. 226-2 is seeking the same costs sought in Docket No. 224 in that both documents seek copying costs for the same documents. However, what the plaintiffs fail to recognize is that the defendants are simply seeking full payment for all copies made. For example, the complaint and related documents is listed on both Docket Nos. 224 and 226-2. Docket No. 224 requests $46.20 for this document (11 copies of the 21 page document at $0.20 per page) and Docket No. 226-2 requests $21.00 for this document (5 copies of the 21 page document at $0.20 per page). The court finds the costs sought by the defendants to be neither duplicative nor excessive. Further, the defendant's billing records are specific and detailed, outlining the documents copied (including docket numbers), to whom they were provided, and the cost for each document.

Although Vought was successful on a single claim, the court does not find that this limited success warrants a reduction in the costs that the defendants seek. The defendants appear to have fully considered this fact in preparing their request for costs. For example, Local 662 does not

request any copying costs, and no defendant seeks any copying costs, other than of the judgment, after February 21, 2008 when all other defendants were dismissed from this case. Therefore, the court finds that the defendants have demonstrated that they are entitled to the full copying costs they seek. All plaintiffs shall be responsible, jointly and severally, for **$1,752.60** in copying costs to defendants Spencer, Konop, Busalacchi, Lovinus, Cornelius, Gegare, Schultz, Wentz, Dason, Jacobs, and Arndt. All plaintiffs shall be responsible, jointly and severally, for **$2,377.00** in copying costs to defendants State of Wisconsin Teamsters Joint Council 39, Kramer, Reardon, Russell, Kaiser, and Skutak.

**IT IS THEREFORE ORDERED:**

(1) Vought's motion for attorneys' fees, (Docket No. 210), is **granted as modified**. Teamsters General Union Local No. 662 shall pay Vought **$42,300.00** in attorneys' fees.

(2) Teamsters General Local Union No. 662 shall pay to Vought **$1,622.68** in taxable costs.

(3) Newell and Alexander, jointly and severally, shall pay **$277.05** in deposition costs to Teamsters General Union Local No. 662.

(4) Newell, Vought, and Alexander, jointly and severally, shall pay **$650.19** in deposition costs to Teamsters General Union Local No. 662.

(5) Newell and Alexander, jointly and severally, shall pay **$1,662.32** in deposition costs to defendants State of Wisconsin Teamsters Joint Council 39, Vicki Kramer, David Reardon, Robert Russell, John Kaiser, and Rick Skutak.

(6) Newell, Vought, and Alexander, jointly and severally, shall pay **$3,901.16** in deposition costs to defendants State of Wisconsin Teamsters Joint Council 39, Vicki Kramer, David Reardon, Robert Russell, John Kaiser, and Rick Skutak.

(7) Newell, Vought, and Alexander, jointly and severally, shall pay **$1,752.60** in copying costs to defendants Spencer, Konop, Busalacchi, Lovinus, Cornelius, Gegare, Schultz, Wentz, Dason, Jacobs, and Arndt.

(8) Newell, Vought, and Alexander, jointly and severally, shall pay **$2,377.00** in copying costs to defendants State of Wisconsin Teamsters Joint Council 39, Kramer, Reardon, Russell, Kaiser, and Skutak.

(9) The Clerk shall amend the judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of August 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge